United States Court of Appeals,

Eleventh Circuit.

No. 97-2915

Non-Argument Calendar.

Samuel WEISS, a child, By and Through his parents and next friends, Debra S. WEISS and Major M. Benjamin Weiss, Debra S. Weiss, M. Benjamin Weiss, Major, Plaintiffs-Appellants,

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, State of Florida, Defendant-Appellee.

May 13, 1998.

Appeal from the United States District Court for the Middle District of Florida (No. 94-1548-Civ-T-25B);  Henry L. Adams, Jr., Judge.

Before TJOFLAT, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Samuel Weiss is an autistic child;  he is thirteen years old.  In September 1994, his parents brought this suit for money damages as an appeal of a final order of the State of Florida Division of Administrative Hearings rendered at the conclusion of an administrative hearing conducted pursuant to Section 1415(c) of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1415.  In their amended complaint, Samuel's parents contend that the School Board of Hillsborough County, Florida, failed to provide Samuel with a "free appropriate public education," as required by the Individuals with Disabilities Education Act, and, in failing to provide such education, denied him rights established by the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Samuel's parents also contend that the School Board infringed two rights guaranteed Samuel by the Fourteenth Amendment:  the right to the equal protection of the laws and the right of travel.

On cross motions for summary judgement, the district court, in the order appearing in the

Appendix, entered summary judgment for the School Board. Samuel's parents appeal, contending the district court should have granted their motion for summary judgment and denied the Board's motion. After considering their arguments for reversal, we conclude that, in all respects, the district court properly applied the law to the material facts (which the parties agree are not in dispute).

AFFIRMED.

ATTACHMENT

*APPENDIX*

ORDER

Before the Court are cross motions for summary judgment (Dkt's.20, 39). Plaintiffs seek relief under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA" or "the Act"), the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983. This action is primarily an appeal of a decision rendered by a state hearing officer. Although the Hearing Officer heard only IDEA issues, Plaintiffs' other claims are based in large part on the resolution of those issues. This Court, having considered the facts and the arguments of counsel and being otherwise fully advised, hereby affirms the decision of the Hearing Officer, and grants the Defendant's motion for summary judgment.

I. BACKGROUND

Samuel Weiss is a child diagnosed with autism. He presently resides in Hillsborough County. Pursuant to the IDEA and the companion Florida statutes, the School Board for Hillsborough County ("School Board") must provide Samuel with a free appropriate public education ("FAPE"). Integral to the concept of an "appropriate" education is the notion that the services provided must be tailored to serve the individual needs of the child. To insure that each child's individual educational needs are met, the school and parents work together to develop an

individualized education program ("IEP").

If the parents and school cannot agree on the contents of an IEP, either party may request a due process hearing. In Florida, due process hearings are conducted by an administrative hearing officer of the Division of Administrative Hearings ("DOAH"). Fla. Stat. § 230.23(4)(m)(4). The DOAH decision is a final order which entitles a party adversely affected to bring an action in either a federal district court or a state court of competent jurisdiction. *Id.;* 20 U.S.C. § 1415(c)(2).

This Court must conduct a *de novo* review of the hearing officer's findings. *Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). Furthermore, the Court has discretion to determine the extent of the deference it will give to the administrative findings. *Doe v. Alabama State Dept. of Educ.,* 915 F.2d 651, 657 n. 3 (11th Cir.1990) (citation omitted). Although the district court's review is in the nature of an appeal, the court is not limited to the administrative record, nor must the court remand if it determines that a remedy was inappropriately denied. The IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate. 20 U.S.C. § 1415(c)(2).

## II. FACTS

During the 1992-1993 school year Samuel Weiss attended school in Fulton County Georgia. In May of 1993, Col. & Mrs. Weiss[1] worked with Georgia school employees to create an IEP to be implemented in 1993-1994 school year. However, during the summer of 1993, the Weisses were transferred to Florida. Having become accustomed to dealing with Samuel's educational needs, the Weisses investigated schools in Hillsborough County and selected a home within the boundaries of Maniscalco Elementary School. The Weisses chose Maniscalco because it had a program

---

[1]At the outset of the events herein Morris Benjamin Weiss was a Major, he was subsequently promoted to Colonel, and referred to as "Col. Weiss" hereafter.

specifically designed to serve autistic children, A Developmental Activities Project Team ("ADAPT"). In an effort to make Samuel's transition as smooth as possible the Weisses sent copies of his Fulton County IEP and other pertinent records to Maniscalco prior to their arrival in Tampa.

On October 6, 1993 the Weisses met with several School Board employees concerning Samuel's placement at Maniscalco. The School Board contends that the Weisses were informed that this was a temporary placement and interim IEP meeting. At the October 6th meeting the Weisses were pleased with the services provided in the ADAPT program and they agreed to Samuel's placement there. The recorder for the meeting filled out an IEP form that she marked "interim." Although the October IEP was not nearly as comprehensive as the Georgia IEP, it sketched out some current levels, some goals and objectives, a list of persons responsible for Samuel's education, evaluation procedures and a schedule.

The Weisses inquired as to whether the Georgia IEP would be followed, and someone at the meeting stated that the Georgia IEP would serve as a guide pending development of a permanent IEP. The Hearing Officer specifically found that the Weisses were not told that the School Board was adopting the Georgia IEP, *per se,* as its own. Rather, the School Board informed the Weisses that it needed to conduct additional evaluations before deciding on a permanent IEP within six months. At the conclusion of the meeting Col. Weiss signed a three page document entitled "Interim IEP." The Weisses also agreed to allow the School Board to perform the necessary tests to re-evaluate Samuel.

Despite the Weisses desire that the Georgia IEP be implemented for Samuel, the School Board did not consider itself governed by that document. Instead, the School Board operated under the interim IEP for six months. During that time, the Weisses were actively involved in Samuels education and frequently expressed concerns and requested changes in the services he was receiving.

It appears that many if not all of their requests were granted; Samuel received a one-to-one aide, a longer period of time for occupational therapy, removal from participation in certain class activities, and the use of a Canon Communicator.

Between December 1993 and February 1994 the School Board conducted several evaluations of Samuel.[2] The Hearing Officer found that those evaluations were sufficient for use in determining Samuel's eligibility for permanent placement and the revision and/or review of his Interim IEP. March 24, 1994 the School Board contacted Mrs. Weiss in order to schedule an eligibility staffing/IEP meeting for Samuel because the interim IEP was due to expire on April 6, 1994. Mrs. Weiss objected to the creation of an IEP at that time and requested the independent evaluation to which she was entitled pursuant to the IDEA. The School Board then asked Mrs. Weiss to attend a case review meeting. Mrs. Weiss requested a written notice concerning the type of meeting to be held in April. The School Board sent her a notice of "case review."

The case review meeting was held on April 6, 1994, exactly six months after the date of the interim IEP. School board personnel answered Mrs. Weiss' questions and determined that they had all evaluations necessary to determine Samuel's eligibility for School Board programs. The School Board then moved the case review meeting to an eligibility staffing, in which the School Board determined that Samuel met the criteria for the autistic program, and that he should receive speech and occupational therapy services. School Board personnel also recommended that Samuel's IEP be reviewed. However, Mrs. Weiss refused to allow the School Board to proceed with an IEP review until independent evaluations were completed. Immediately following the meeting the

---

[2]An occupational therapy evaluation was conducted in December, 1993; a psychological evaluation in February, 1994; an assistive technology evaluation in February, 1994; and a social and developmental history was conducted in March, 1994; three speech assessments were also conducted.

School Board ordered independent evaluations for Samuel. The Weisses removed Samuel from Maniscalco on April 7, 1994 and began schooling him in their home. In the summer of 1994, after the conclusion of the independent evaluations, the School Board developed a permanent IEP for Samuel. In the meanwhile, the Weiss' challenged the school's use of the temporary IEP before an administrative Hearing Officer.

The Hearing Officer found that Samuel progressed both academically and behaviorally while he was in the ADAPT program at Maniscalco. The final order of the Hearing Officer details Samuel's progress.

### III. ISSUES

The issues presented to the Administrative Hearing Officer were: (1) whether the interim IEP was proper; (2) whether the School Board performed proper evaluations for a permanent IEP and placement by April 6, 1994; (3) whether the School Board provided Samuel Weiss a FAPE; and (4) if the School Board violated any applicable law, whether the school board should be required to provide compensatory educational services. The Hearing Officer conducted five days of hearings and permitted supplemental pleadings after the conclusion of the hearing. Although the Hearing Officer found defects in the School Board's notifications and in the interim IEP,[3] the Hearing Officer found for the School Board on all issues.

The primary issue before this Court is whether under the IDEA, the School Board provided Samuel Weiss with a FAPE during the 1994-1995 school year. Plaintiffs argue that the temporary IEP prepared by the School Board denied Samuel a FAPE, and that the school board should have

---

[3]The notice the Weisses received prior to the October 6, 1993 meeting contained a misnumbered F.A.C. Rule. The Hearing Officer found that, even if the notice was technically deficient, the Weisses had not shown prejudice. Similarly, the Hearing Officer found that the interim IEP was legally sufficient, although the IEP could have clarified what parts of the Georgia IEP were being adopted and what parts were being rejected. (Final Order ¶ 52, 53).

implemented the Georgia IEP, or in the alternative, created a suitable IEP for Samuel before the end

of the six month period permitted by Fla. Admin. Code R. 6A-6.0334.[4]

The Weisses also claim that the school discriminated against Samuel in violation of the

Rehabilitation Act. Further, the Weisses argue that Fla. Admin. Code R. 6A-6.0334 violates the

fundamental right to travel secured by the Fourteenth Amendment.  Finally, the Weisses assert that

their federally protected rights are enforceable under 42 U.S.C. § 1983.

## IV. STANDARD ON SUMMARY JUDGMENT

---

[4]The Florida Administrative Code Rule 6A-6.0334 provides in pertinent part:

> (3) An exceptional student who is transferring from an out-of-state public school who has a current IEP and evaluation data necessary to determine that the student meets Florida's eligibility criteria for special programs or does not meet the district's dismissal criteria, may be placed immediately in the appropriate educational program(s), without temporary assignment....

> (4) Temporary assignment.  A transferring exceptional student may be temporarily assigned to a special program for exceptional students for a period not to exceed six months.

> (5) The school board shall establish policies and procedures for temporary assignment of transferring exceptional students, including but not limited to the following:  ...

> (e) Developing a temporary individual educational plan for eligible exceptional students in accordance with Rule 6A-6.0331, FAC.;  and

> (f) Providing notice and obtaining parental consent for temporary assignment in accordance with Rule 6A-6.03311, FAC. If there is evidence of the parent's consent to the student's initial placement in a special program, or for those exceptional students who are adjudicated and placed in commitment programs, awaiting assignment to commitment programs for delinquent dependents, or detained awaiting adjudication, only informed parental notice of temporary assignment is required.

> (g) Within six (6) months of temporary assignment, a staffing committee shall meet a decision on eligibility for permanent assignment shall be made and an IEP committee shall determine placement in accordance with Rules 6A-6.0331 and 6A-6.03311, FAC....

Summary judgment may not be granted unless the pleadings depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P.56. The moving party satisfies its burden by showing an absence of evidence to support an essential element or the nonmoving party's case. *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2549. Once the moving party demonstrates the absence of a genuine material fact, whether or not accompanied by affidavits or other proof, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file,' designate "specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)); *Hoffman v. Allied Corp.,* 912 F.2d 1379, 1382 (11th Cir.1990).

## V. FREE APPROPRIATE PUBLIC EDUCATION

To determine whether Samuel Weiss received a FAPE this Court must determine: (1) whether the State has complied with the procedures set forth in the IDEA; and (2) whether the IEP developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. *Rowley,* 458 U.S. at 206-207, 102 S.Ct. at 3050-51; *Doe,* 915 F.2d at 655.

## A. Procedures under the IDEA

The procedural prong of the FAPE analysis assesses whether the state has complied with the procedures set forth in the IDEA, including the creation of an IEP that conforms to the requirements of the Act. *Doe,* 915 F.2d at 658. In evaluating whether a procedural defect has deprived a student of a FAPE, the Court must consider the impact of the procedural defect, and not merely the defect *per se. See Doe,* 915 F.2d at 661-662. The Weisses list twenty-seven acts of the School Board

which the Weisses claim denied Samuel a FAPE.[5] The majority of the acts listed by Plaintiffs stem

[5]Plaintiffs assert that the School Board violated the IDEA by:

(1) Failing to conduct evaluations prior to the formation of a six-month IEP.

(2) Formulating an IEP based on information that was not legally sufficient.

(3) Failing, upon the decision to reject the Georgia IEP, to treat Samuel Weiss as a new student, which would have required the School District to formulate a valid IEP within 30 days of the eligibility meeting on October 6, 1993, or to otherwise formulate the IEP with all due haste to limit the amount of time Sam was without an IEP formulated according to Congressional intent requirements and intent.

(4) Failing to ensure that the Weisses understood the actions the School District was taking at the October 6, 1993 meeting, including the School District's determination that the documentation provided by the Weisses was inadequate for the School District to adopt the Georgia IEP (and to thereafter comply with the law regarding review and revision of IEPs).

(5) Failing to provide appropriate notice to the Weisses of procedural safeguards available to them.

(6) Formulating an IEP that was inadequate and erroneous in its statement of Samuel's current levels of performance.

(7) Formulating an IEP that was too vague to use for purposes of educational planning.

(8) Reducing on the face of the "Interim IEP" the commitment of resources to which Sam was entitled by specifying a range of time, rather than a fixed amount of time, for therapy services that were required in his Georgia IEP without having conducted educational evaluations that would justify such reductions.

(9) Failing to provide Samuel Weiss with the speech and occupational therapy services that were required in his Georgia IEP without having conducted educational evaluations that would justify such reductions.

(10) Failing to provide the Weisses with all of Samuel's student records upon their request for same.

(11) Failing to adopt, on the "interim IEP," goals and objectives that had been properly formulated and which were appropriate to Samuel Weiss.

(12) Failing to use deliberate speed to ensure that Samuel was under the "interim IEP" only for as long as essential while appropriate educational evaluations were conducted.

either from the School Board's failure to implement the Georgia IEP, or the alleged inadequacy of

---

(13) Failing to provide notice to the Weisses when evaluations were scheduled and failing to have any policy requiring such notice to parents.

(14) Implementing classroom strategies that were inappropriate to Samuel Weiss.

(15) Precluding Samuel from eating in the school cafeteria based solely on his disability, and without regard to his individual needs, abilities or (Georgia) IEP goals and objectives.

(16) Creating and implementing an "interim IEP" even though the ADAPT placement was not for evaluative purposes.

(17) Failing to implement the Georgia IEP behavioral management plan.

(18) Failing to implement any behavioral management plan that was individualized to Samuel's needs, abilities, unique emotional make-up, and degree of development of self-control.

(19) Failing to create a behavioral management plan in conjunction with Samuel's parents.

(20) Failing to appropriately chart Samuel's behavior, even after determining his behavior was an issue that needed attention.

(21) Failing to appropriately respond to Samuel's behavioral communication regarding Positive Action, hand-over-hand writing, etc.

(22) Failing to obtain evaluations timely to permit a considered IEP meeting and to prevent a 12th-hour attempt to complete an IEP in order to meet the District's six-month deadline.

(23) Failing to formulate a speech evaluation that adequately evaluated the non-speaking child's various modes of communication, which evaluation would permit the IEP committee to appropriately formulate goals and objectives for the child.

(24) Determining that, upon the conclusion of its six-month grace period, the School District's permanent IEP would be a "review" of the "interim IEP" rather than having the imprimatur of a new IEP.

(25) Using the ADAPT Curriculum Plan to supplant the purposes and role of the IEP.

(26) Unilaterally formulating the objectives on the ADAPT Curriculum Plan without the equal participation of Samuel's parents.

(27) Failing to provide Samuel a placement that accommodated his sensitivity to extraneous sounds.

the interim IEP.

## 1. Florida Administrative Code Rule 6A-6.0334

The Weisses challenge the validity of Fla. Admin. Code R. 6A-6.0334, contending that a receiving school which chooses not to accept a current out-of-state IEP cannot wait as long as six months to formulate a permanent IEP. The Weisses claim that the School Board should have implemented a revised Georgia IEP if it deemed the Georgia IEP insufficient, or created its own permanent IEP. Although Fla. Admin. Code R. 6A-6.0334, promulgated by the State Board of Education, allows up to six months for the development of a permanent IEP for transfer students, the Weisses claim that Florida's regulation is valid "only to the extent that [it] do[es] not limit the rights of children with disabilities to a free appropriate public education ..." (Plaintiff's Mot. at 35 n. 11). Thus the Court must evaluate whether Fla. Admin. Code R. 6A-6.0334 limits Samuel Weiss' ability to receive a FAPE.

The IDEA defines "free appropriate public education" as special education and services that: (A) have been provided at public expense, under public supervision and direction, and without charge, (B) *meet the standards of the state education agency,* (C) include an appropriate preschool, elementary, or secondary school education in the state involved, and (D) are provided in conformity with the individualized education program required under section 1415(a)(5) of th[e Act]. 20 U.S.C. § 1401(a)(18) (emphasis added). As discussed *infra,* the interim IEP used by the School Board during the six month period provided by Fla. Admin. Code R. 6A-6.0334 conformed to textual definition of FAPE.

Further, Fla. Admin. Code R. 6A-6.0334 does not appear to be inconsistent with the goals or purposes of the IDEA. The central purpose of the IDEA is to provide exceptional children with access to public education. *Rowley,* 458 U.S. at 194 n. 18, 102 S.Ct. at 3045 n. 18. The Weisses

transferred Samuel to Maniscalco in October, and a permanent IEP could not have been implemented without proper evaluation, which the School Board began in December and continued through March of the following year. The six month window created under Fla. Admin. Code R. 6A-6.0334 is not inconsistent with the IDEA's goal to provide Samuel with a FAPE. Absent clear direction from Congress, the Court will not invalidate a state rule because it differs from a particular party's interpretation of the IDEA.

## 2. Florida Interim IEP

The Weisses claim that the interim IEP provided for Samuel during the six month period was deficient and denied him a FAPE. The IDEA sets out specific standards for an IEP which the Court must consider. 20 U.S.C. § 1401(a)(20); *J.S.K. v. Hendry County School Bd.,* 941 F.2d 1563 (11th Cir.1991). The Hearing Officer found that the interim IEP was legally sufficient under Florida law and the IDEA, although it lacked specificity and failed to explain the effect of the Georgia IEP. The Court upholds the Hearing Officer's findings regarding the legal sufficiency of the interim IEP. The IEP contained a statement of Samuel's current educational performance, a statement of annual goals, a statement of the specific education and related services to be provided, a statement of how much Samuel would participate in regular education programs, and the dates for and initiation of services. *See* 20 U.S.C. § 1401(a)(20). The interim IEP was neither as long nor as detailed as the Georgia IEP, but the Court finds it was satisfactory under the IDEA.[6]

## 3. Notice to the Weisses

Among the twenty-seven alleged violations by the School Board, the Weisses list several

---

[6]Even assuming that the IEP was deficient, the Weisses have not shown that any procedural defect in the formulation or content of the interim IEP denied Samuel a FAPB. Samuel was placed in ADAPT, a program which the Weisses specifically requested for Samuel before transferring him to Maniscalco. The Hearing Officer found that Samuel made academic and behavioral progress while in the ADAPT program.

procedural defects in the notice provided to the Weisses. The Weisses claim that the School Board failed to ensure that the Weisses understood the ramifications of the October 6, 1993 meeting, failed to provide appropriate notice to the Weisses of procedural safeguards available, failed to provide the Weisses with all of Samuel's school records, failed to notify the Weisses when evaluations were scheduled, and unilaterally formulated the objectives of the ADAPT Curriculum Plan without the equal participation of the Weisses.

For the Weisses to prove that Samuel was denied a FAPE, they must show harm to Samuel as a result of the alleged procedural violations. Violation of any of the procedures of the IDEA is no a *per se* violation of the Act. The Weisses cite language from *Rowley,* 458 U.S. at 205-06, 102 S.Ct. at 3050-51. However, in *Doe,* the Eleventh Circuit qualified the Supreme Court's language, noting that the Court was concerned with the purpose behind procedural notice requirements—full an effective participation in the IEP process. *Doe,* 915 F.2d at 662. Because the purpose of the procedural requirements was not thwarted, the Court found no violation of the IDEA based on the procedural defects.

Here, Plaintiffs seek to advance a *per se* violation argument, claiming that the School Board's failure to provide specific notice to the Weisses of various aspects of Samuel's education are *per se* denials of a FAPE to Samuel. However, the facts do not show that any of these procedural defects resulted in harm to Samuel, or restricted the Weiss' ability to participate fully in Samuel's education.

The Weisses' first contention is belied by the undisputed facts. The Florida IEP which Col. Weiss signed stated clearly "Interim IEP," and several changes requested by the Weisses reflected items already a part of the Georgia IEP, such as the use of a one-to-one aid and increased time in occupational therapy. As to the other alleged violations, the facts do not show that the Weisses were precluded from participating or making informed decisions regarding the education Samuel

received.  Although the IDEA envisions full parental participation in the development of the IEP, the Act does not mandate such participation in every aspect of the educational process.  *Cf. Doe,* 915 F.2d at 662.  Nevertheless, the facts show that the Weisses participated extensively in Samuel's education, initiating the use of a Canon Communicator for Samuel, increasing his weekly time in occupational therapy from 30 minutes to 60 minutes, and obtaining a one-to-one aid.  At various points during the school year the Weisses requested that Samuel be removed from the Positive Action activity, that he no longer be made to write, and that he receive a fourth-grade curriculum. In sum, the Weisses have not shown a denial of participation resulting from the procedural violations.

### 4. Excluded Report[7]

The Weisses also claim that the Hearing Officer refused to admit the result of the independent evaluation but proceeded to use the evaluation in ordering his decision.  The Weisses claim that the Hearing Officer's actions denied them the benefit of the independent evaluation provided under the IDEA. The Hearing Officer denied the evaluation based on the School Board's hearsay objection.  The preparer of the report was not available to testify. and thus the Hearing Officer sustained the objection.  Neither party had access to the report for the purposes of the administrative hearing, and there is no showing that the Weisses were barred based on the fact that the report was excluded.  Further, the Weisses have not provided any specific proof that the Hearing Officer referred to the report in his findings.  The Court finds that the exclusion of the report did not constitute a violation of the IDEA.

---

[7]Plaintiffs claim that the Hearing Officer's failure to admit the report supports its argument that the "Final Order should be accorded no deference by this Court."  (Plaintiff's Mot. at 30). The Court interprets this argument to allege a violation of the procedures required under the IDEA.

B. Adequate Educational Benefits

Under the substantive prong of *Rowley* the Court must determine whether Samuel received adequate educational benefits during his year at Maniscalco. *J.S.K. v. Hendry County School Board,* 941 F.2d 1563, 1572-73 (11th Cir.1991) (interpreting *Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690). Adequate educational benefits refer to a "basic floor of opportunity" which might not have existed without the IDEA. *Id.* The Hearing Officer's findings include a thorough review of Samuel's educational experience while at Maniscalco, and conclude that Samuel progressed both academically and behaviorally during the school year. The final order sets forth a lengthy recitation of Samuel's progress. (Final Order ¶ 37, 38). In their motion for summary judgment. the Weisses disagree with the Hearing Officer's interpretation of certain facts and offer others in support of their position that Samuel did not receive adequate educational benefits. Upon review of the objections to the final order, it appears that the Weisses do not refute the Hearing Officer's recitation of the academic benefits Samuel received. Rather, the Weisses spend a great deal of their memorandum discussing the faults of the educational services that Samuel received and explaining how Samuel would have made greater progress had the Georgia IEP been implemented. The Weisses also contend that Samuel's behavior regressed during the school year.

The Court is certain that both the Weisses and the School Board desire to provide Samuel with an education which will maximize his potential. However, the School Board is not required to maximize his potential. *Doe v. Alabama State Dept. Of Educ.,* 915 F.2d 651, 665 (11th Cir.1990). Nor is the School Board required to provide an education according to the dictates of Col. and Mrs. Weiss, notwithstanding their unequivocal right to participate in making educational decisions. The Court finds that Plaintiffs have not adequately refuted the Hearing Officer's conclusion that Samuel made measurable and adequate gains in the classroom as required under *J.S.K.,* 941 F.2d 1563.

Thus, the Weisses have failed to show a violation of the IDEA under either prong of the *Rowley* standard.

## VI. SECTION 504 OF THE REHABILITATION ACT

The Weisses claim that the School Board discriminated against Samuel in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794. The Weisses contend that the State rules which provide for temporary placement under an interim IEP as well as the School Board's decision not to implement the Georgia IEP constitute "bureaucratic obstacles to Samuel's ability to obtain appropriate educational opportunity," based solely on Samuel's disability. (Plaintiff's Mot. at 69). The Weisses compare the School Board's treatment of Samuel to that of his older brother who is not handicapped, noting that Samuel's brother only had to show his report card to be appropriately placed. As proof of the discriminatory motives of the School Board, the Weisses highlight the fact that Samuel did not eat lunch in the cafeteria where non-handicapped students spent their lunches.

The Court finds that the Weiss' Rehabilitation Act claim is essentially the same as their IDEA claim, and fails for the same reasons that the IDEA claim fails. *See Doe,* 915 F.2d at 666. As to the school's differential treatment of Samuel and his brother, the Court finds no discrimination against Samuel because be is disabled. The IDEA requires a school district to conduct evaluations and develop an IEP before the school district may permanently place an exceptional student. Non-handicapped students are not subject to the IDEA; they do not normally undergo evaluations, nor do they receive IEPs. Any comparison between the School Board's treatment of Samuel and his older brother is inapposite. The "bureaucratic barriers" of which the Weisses complain constitute part of the very framework under which they expect a special education for Samuel, and through which they seek redress in these proceedings. If Samuel were treated as a non-handicapped student and simply placed into a class on the basis of a report card, that would constitute a violation of the

IDEA. The Court likewise refuses to find discrimination because the school kept Samuel's class in the classroom during lunchtime for the first semester of the school year.[8]

## VII. FOURTEENTH AMENDMENT

The Weisses contend that the Florida regulatory scheme burdens their fundamental right to travel interstate in violation of the Equal Protection Clause of the Fourteenth Amendment. The Weisses argue that Fla. Admin. Code R. 6A-6.0334 which allows a School District six months to create a permanent IEP for a student transferring from another state treats students with disabilities transferring from out of state less favorably than student transferring from another school district within the state.[9]

In *Shapiro v. Thompson* the Supreme Court invalidated a state statute which denied welfare

---

[8]The School Board states that Samuel's class was kept from the cafeteria so that the students could better adjust to the new learning environment. The Weisses compare this reasoning with the justifications advanced by the schools in *Brown v. Board of Education.* The Court finds no correlation between the separation during lunch period of the ADAPT students and the racial segregation addressed in *Brown,* and refuses to substitute its own notion of sound educational policy for that of the educators in this case. *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050-51.

[9]Fla. Admin. Code R. 6A-6.0334(2) provides:

> An exceptional student who is transferring from an out-of-state public school district to another and who has a current individual educational plan (IEP) shall be placed in the appropriate educational program(s) consistent with the plan.

Fla. Admin. Code R. 6A-6.03028(3)(b) provides:

> An IEP must be developed prior to assignment in special programs and within thirty (30) calendar days following the determination of eligibility for new students with a disability assigned to a special program.

The requirement of 6A-6.03028(3)(b) that an IEP be developed within thirty days does not apply to exceptional students transferring from another state. School Boards have up to six months to develop an IEP for students transferring from another state. *See* Fla. Admin. Code R. 6A-0334(4), cited in full at note 3, *supra.*

assistance to state residents who had not resided within the jurisdiction for at least one year. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The Court subjected the law to strict scrutiny and found that the justifications offered by the government did not constitute compelling state interests. *Id.* The Court discussed the right to travel in the context of public education in *Martinez v. Bynum*, 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983). In *Martinez* the Court distinguished durational residency requirements such as the one invalidated in *Shapiro,* from bona-fide residence requirements, which discriminate in favor of residents over non-residents. *Martinez,* 461 U.S. at 326, 103 S.Ct. at 1841. The Court stated that bona-fide residence requirements are permissible in the field of education. *Id.*

Fla. Admin. Code R. 6A-6.0334 is neither a durational residence nor a bona-fide residence requirement. The Rule does not attempt to distinguish between true residents and out-of-state residents seeking the benefits of a Florida education. Nor does the rule require that Florida residents remain in the jurisdiction for a period of time before receiving educational benefits. The Rule can be loosely analogized to a durational residence requirement because it provides School Boards a longer period of time in which to prepare a permanent IEP for residents transferring from other states.

Nevertheless, Fla. Admin. Code R. 6A-6.0334 does not burden the right to travel. The fact that a School Board may have up to six months to formulate a permanent IEP does not prevent or inhibit residents of another state from traveling to Florida. The Rule does not require, for example, that exceptional students wait six months before receiving special education. Under Fla. Admin. Code R. 6A-6.0334 School Boards have up to six months to conduct evaluations and formulate a permanent IEP. An exceptional student operating under a temporary IEP is still entitled to receive the educational benefits guaranteed under the IDEA. The School Board explains that the Rule's six

month period provides a school district time in which to gather evaluative information on the out-of-state student and ascertain the student's eligibility for Florida programs. (Def.'s Mot. at 16). The Court finds that Florida's rule is a rational means to carry out the requirements of the IDEA. The Court finds no violation of the Equal Protection Clause.

## VIII. 42 U.S.C. § 1983

Because the Weisses have not shown a violation of the IDEA, Section 504, or the Equal Protection Clause, the Weiss' 42 U.S.C. § 1983 claim is denied.

## IX. CONCLUSION

Based upon the foregoing, it is ORDERED:

1. Summary Judgment in favor of the Hillsborough County School Board is GRANTED.

2. Partial Summary Judgment in favor of Samuel Weiss, by and through his parents and next friends, Debra S. Weiss and M. Benjamin Weiss, and Debra S. Weiss and M. Benjamin Weiss for themselves, is DENIED.

3. Defendant's motion to supplement the record (Dkt.57) is GRANTED.

4. Plaintiffs motions for reargument of cross motions for summary judgment, to set for new trial, and to amend pre-trial stipulation (Dkt.63) are DENIED.