789 So.2d 1162 (2001)
The SCHOOL BOARD OF LEE COUNTY, Florida, Appellant,
v.
S.W., Appellee.
No. 2D99-4358.
District Court of Appeal of Florida, Second District.
July 6, 2001.
*1163 Marlene S. Reiss, Miami, for Appellant.
J. Michael Hussey, Fort Myers, for Appellee.
SALCINES, Judge.
The School Board of Lee County appeals from a final order of an administrative law judge concerning the design and implementation of an individual education plan established on behalf of S.W., an individual with disabilities. We affirm in part and reverse in part.
S.W., who turned twenty-one years old during this administrative hearing, suffers from cerebral palsy, mental retardation, and some degree of cortical blindness. In addition, she has been identified to have speech and language deficits. S.W.'s expressive language age level is that of a child of twenty-three to twenty-six months. She can make bi-labial sounds like "mmm," "ddd," and "bbb," and she is able to form glides which are represented by vowels. She has a very limited vocabulary-at one point, ten words. Her communication skills are rudimentary. S.W.'s deficiencies have generally been described as "profound."
In compliance with the strictures of the federal law known as the Individuals with *1164 Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq., numerous individual education plans ("IEPs") were developed through the Lee County School District for S.W. over a period of years. The present appeal concerns only one of the numerous IEPs developed for S.W.the October 1998 IEP. Nonetheless, a procedural history is helpful to understand the circumstances surrounding S.W.'s ultimate placement within the Lee County School District.
Although S.W.'s parents did not seek any due process hearings concerning the substantive or procedural propriety of the prior IEPs, their dissatisfaction with those prior IEPs was evidenced by complaints they filed with both the United States Department of Education's Office of Civil Rights and the Florida Department of Education's Bureau of Instructional Support and Community Services. The Florida complaint was directed at the school board's failure to provide transition services for which S.W. was eligible because she had reached the age of sixteen. See 20 U.S.C. § 1401(a)(20)(D) (1997). An order was entered finding, in part, that S.W. had not been provided transition services from December 1995 to May 1997. That order directed the school board to ensure that all future IEPs contain the components of transition planning and required the school board to confirm that the specified transition services were then provided.
The federal complaint asserted that S.W.'s rights had been violated because her IEP did not specify that services would be provided in a least restrictive environment. More specifically, the federal complaint challenged S.W.'s placement at Estero High School in the Lee County School District. In the federal matter, the school district entered into a settlement agreement in which it agreed, among other things, to place S.W. at Cypress Lakes High School at the request of her parents.
S.W. was transferred to Cypress Lakes in October 1997. Subsequently, a request for a due process hearing was initiated concerning S.W.'s educational placement. The due process hearing was conducted in October 1999, relating to the IEP prepared for S.W. in October 1998 while she was enrolled in Cypress Lakes.
The due process hearing was conducted over a three-day period before an administrative law judge ("ALJ"). At the beginning of the hearing, after the parties had presented various motions, S.W.'s counsel stated the specific issues for which relief was being sought. Significantly, S.W.'s counsel did not challenge the qualifications of any of the individuals who were actually providing services pursuant to the IEP, including the regular speech therapist or any supervisory speech therapists. Numerous members of the team designated to provide services to S.W. testified at the hearing. Additionally, the teacher who directed the exceptional student education ("ESE") program at Cypress Lakes testified extensively regarding the program and the classroom in which S.W. received instruction. The ESE class of eight students was taught in an engineered classroom, which included augmentative communication devices placed in strategic places to assist the students with communication skills. The classroom also included a kitchen, a washer, and a dryer to enable students to practice daily living skills. The ALJ found that the teacher's "enthusiasm for the Cypress Lakes program [was] inspiring," and that "[a]s impressive as the new classroom [was] at Cypress Lakes, even more impressive [was] the integration of S.W.'s ESE class into the high school."
In the final order, the ALJ consolidated the plethora of specific issues raised by S.W.'s counsel into more general category-based issues upon which he ruled. The *1165 ALJ found in favor of the school board in regard to due process claims and whether S.W. was in the appropriate educational placement. Those findings are not disputed in this appeal. The two issues which are the subject of this appeal were whether the school board failed to provide S.W. a free appropriate public education either through improper design or inadequate implementation of her then-current IEP; and, whether S.W. was provided appropriate transition services pursuant to federal and state law.
Although the ALJ found that the IEP and most of the services provided to S.W. satisfied the requirements of IDEA, he found that three deficiencies required a remedy. The ALJ found the IEP deficient in articulating measurable standards to determine S.W.'s progress and ordered that S.W.'s next IEP detail methodologies as to how progress toward annual goals was to be measured. The ALJ also found that although at least one outside agency had been invited to attend the subject plan conference, no agencies had sent representatives and, thus, ordered that at the next plan conference, agencies other than the local education agency that may assist in providing transition services for S.W. be invited and attend unless another agency representative may be appropriately substituted in attendance. Finally, the ALJ found that services were not being provided by a qualified speech therapist and ordered that S.W. be provided speech and language therapy by a qualified speech and language pathologist or therapist.
The ALJ's conclusion that S.W.'s next IEP must "detail methodologies for how progress toward annual goals [was] to be measured," was nothing more than a confirmation of standards required under IDEA and its implementing regulations. See Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F.Supp. 83, 96-97 (S.D.N.Y.1996) (holding that lack of specificity in identifying methods for evaluating student's progress violated IDEA). The ALJ did not order the school board to use a particular methodology, but merely directed it to identify which methodology it would be using. The ALJ correctly applied the law in this regard.
Likewise, the ALJ's conclusion that at the next plan conference, agencies other than the local education agency that may assist in providing transition services for S.W. be invited, was nothing more than a confirmation of standards required under IDEA and its implementing regulations. See 34 C.F.R. § 300.344(3)(i) (1999). The ALJ correctly applied the law in this regard. However, the ALJ further ordered that the invited outside agencies also "attend unless another agency representative may be appropriately substituted in attendance." The school board argues that this language implicitly directs it to compel other agencies' attendance at the next plan conference. The implementing regulation provides, in pertinent part:
(3)(i) In implementing the requirements of § 300.347(b)(2), the public agency also shall invite a representative of any other agency that is likely to be responsible for providing or paying for transition services.
(ii) If an agency invited to send a representative to a meeting does not do so, the public agency shall take other steps to obtain participation of the other agency in the planning of any transition services.
34 C.F.R. § 300.344(b)(3)(i), (ii) (1999). The school board could have taken any number of "other steps to obtain participation of the other agency," short of compelling the other agency's attendance by legal proceeding. To the extent that the ALJ ordered the school board to take a specific action to ensure the attendance of another agency at the transition service meeting, he abused his discretion.
*1166 Finally, the ALJ sua sponte found that the speech and language teacher provided by the school board was not qualified and ordered that S.W. be provided speech and language therapy by a qualified speech and language pathologist or therapist. S.W. did not specifically raise this issue prior to or during the due process hearing. Further, the ALJ's crucial finding of fact concerning the qualifications of the regular speech therapist was not supported by substantial, competent evidence, and the remedy ordered by the ALJ was inconsistent with the other findings of fact which were supported by substantial, competent evidence.
At the due process hearing, the speech therapist, who regularly worked with S.W., testified that she had taken six hours of field course work in speech pathology and that she was teaching out of the field area for which she was certified to teach. She also testified, however, that she was supervised by an infield "consultative speech language pathologist."[1] In the final order the ALJ acknowledged "[t]here was no evidence offered as to what credentials or experience would be required in a speech and language teacher of an ESE student such as S.W. in order to meet [free appropriate public education] requirements. Nor was there any testimony of the difficulty in retaining the services of such a speech and language pathologist." Despite these findings, and without considering the degree of oversight by the consultative speech language pathologist, the ALJ nonetheless found that "common sense" dictated that the speech therapist provided to S.W., who was teaching out of field, was not qualified. There was simply no evidence to support this finding and the school board was not placed on notice that it needed to present evidence concerning the credentials of the members of the speech therapy program because S.W. failed to raise this issue prior to or during the due process hearing.
Additionally, the record reveals that S.W. had significantly improved her quality of communication using augmentative communication and she also had increased her verbal output although that improvement was more limited. Indeed, in the findings of fact, the ALJ found that S.W.'s communication skills had improved and stated that "the communication improvement must have been the result of the Cypress Lakes program." Neither the record nor the ALJ's findings of fact support the finding that the ESE speech and language services provided to S.W. fell below the standard required to provide S.W. with a free appropriate public education where the evidence demonstrated improvement and progress, and the ALJ's findings of fact demonstrated that S.W. had derived benefit from the educational process. See Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Accordingly, the ALJ incorrectly applied the law by requiring the school board to obtain the services of a speech and language therapist other than the individual who had been provided on a regular basis.
Affirmed in part, reversed in part.
PATTERSON, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] In the final order, the ALJ noted that he did not have the benefit of a transcript when preparing the lengthy and thorough order. The lack of the transcript might explain the ALJ's failure to consider this aspect of the speech therapist's testimony in this otherwise comprehensive and thoughtful order.