918 So.2d 316 (2005)
M.H., Appellant,
v.
NASSAU COUNTY SCHOOL BOARD, Appellee.
No. 1D05-0970.
District Court of Appeal of Florida, First District.
October 18, 2005.
*317 Doris Landis Raskin, Esquire of the Law Offices of Doris Landis Raskin, P.A., Jacksonville, for Appellant.
Leonard T. Hackett, Esquire and Lori A. Cooper, Esquire of Vernis & Bowling of North Florida P.A., Jacksonville, for Appellee.
BENTON, J.
We have for review an administrative law judge's order, entered under section 1003.57(5), Florida Statutes (2003), that concludes that the Nassau County School Board "has done all that can be expected to define the needs of [M.H.] in the absence of parental consent for a complete evaluation": "As to provision of specialized instruction and related services," the order further concludes, the School Board "has, within the limited area permitted by [M.H.'s] mother, complied with requirements of [Board of Education of the Hendrick Hudson Central School District v.] Rowley [, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)]." We reverse.
Under the Florida Constitution, "[d]istrict courts of appeal ... have the power of direct review of administrative action, as prescribed by general law." Art. V, § 4(b)(2), Fla. Const. Our jurisdiction in the present case is clear, although the appellant might have chosen to file suit in circuit court, or United States district court, instead. See Dellmuth v. Muth, 491 U.S. 223, 228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989) (noting reenacted statutory predecessor's "judicial review provision, which permits parties aggrieved by the administrative process to [pursue state remedies or] `bring a civil action ... in a district court of the United States without regard to the amount in controversy.' 20 U.S.C. § 1415(e)(2)"); W.R. ex rel. Doe v. Sch. Bd. of Osceola County, 726 So.2d 801, 804 (Fla. 5th DCA 1999); Dist. Sch. Bd. of Putnam County v. Roderick ex rel. Mercer, 593 So.2d 1174, 1175 (Fla. 5th DCA 1992). Applicable general law provides that "any party aggrieved by the finding and decision rendered by the administrative law judge shall have the right to request an impartial review of the administrative law judge's order by the district court of appeal as provided by s. 120.68." § 1003.57(5), Fla. Stat. (2003).
The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., like its predecessor, the Education for All Handicapped Children Act of 1975, finances *318 the education of children with disabilities by rendering eligible for federal funding states that comply with certain requirements delineated in the IDEA. 20 U.S.C. § 1412 (2003). To qualify for federal funding, the state must provide a "free appropriate public education"[1] for all children with disabilities. 20 U.S.C. § 1412(a)(1). In accordance with specific statutory procedures, a child of school age suspected of a disability must be evaluated to ascertain whether an enumerated disability adversely affects educational performance, and an "individualized education program" must be developed, then implemented, to provide services and instruction for each disabled child. 20 U.S.C. § 1412(a)(3)-(4).
Florida has incorporated the federal guidelines into section 1003.57, Florida Statutes, and chapter 6A-6, Florida Administrative Code, under which, before requiring that a child be evaluated for placement as an "exceptional student," the school board has to document that less drastic "interventions" were undertaken and failed;[2] or that the child's parent requested the evaluation. See Fla. Admin. Code R. 6A-6.0331(3) (2003). "No student [shall] be given special instruction or services as an exceptional student until after he or she has been properly evaluated, classified, and placed in the manner prescribed by the rules...." § 1003.57(5), Fla. Stat. (2003).
M.H., who suffers, all agree, from Tourette's Syndrome and attention deficit hyperactivity disorder (ADHD),[3] attended fourth grade at Callahan Intermediate School during the 2003-04 school year. When M.H. was in second grade, in November of 2001, a "Section 504[4] Accommodation Plan" had been decided upon: Under the Plan, M.H. was to be seated near the teacher; he was to be allowed extra time for exams; and his penmanship was not to be graded. In August of 2003, a meeting was held to review M.H.'s accommodation *319 plan, but no changes were made at that time. (School personnel refused several additional accommodations that his mother and grandmother suggested.) In November of 2003, however, the school did transfer M.H. to another teacher, Ms. Thompson.
Initially M.H. did well in Ms. Thompson's class, but his performance eventually declined. He had particular difficulty with "written responses," often not even attempting to complete written assignments, sometimes just putting big question marks on his papers. Ms. Thompson testified that she moved M.H. to the front of the room and gave him additional time on tests. Even though it was not required by his accommodation plan,[5] Ms. Thompson graded M.H. on only the math problems that he worked, instead of on the whole assignment, so that if he completed ten of fifteen problems assigned, his score would be based on how many of the ten he had completed correctly. She did not grade his handwriting. She used nonverbal cues to keep him on task, and, at one point, assigned a student to sit next to him and remind him to take his books home and turn in assignments.
By letter dated August 9, 2004, counsel for M.H. and his mother requested a due process hearing and an evaluation. This request constituted consent within the meaning of the rules. "Written parental consent shall be obtained prior to formal, individual preplacement evaluation to determine eligibility for special programs for exceptional students." Fla. Admin. Code R. 6A-6.03311(3)(a) (2003). Additionally, "[p]arental consent shall be obtained prior to initial placement of the student into a special program for exceptional students." Id. at R. 6A-6.03311(3)(b). "[A due process] hearing[] may be initiated by a parent... on the proposal or refusal to initiate or change the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education to the student." Id. at R. 6A-6.03311(5)(a). "A hearing shall be conducted by a hearing officer from the Division of Administrative Hearings, Department of Administration." Id. at 6A-6.03311(5)(e). See also § 1003.57(5), Fla. Stat. (2003).
A child has a disability within the meaning of the IDEA, if evaluated and found to suffer from: "mental retardation, a hearing impairment including deafness, a speech or language impairment, a visual impairment including blindness, serious emotional disturbance ..., autism, traumatic brain injury, an other health impairment, a specific learning disability, deaf-blindness, or multiple disabilities, and who, by reason thereof, needs special education and related services." 34 C.F.R. § 300.7(a)(1) (2003). ADHD constitutes an "other health impairment" if it is determined that the ADHD "results in limited alertness with respect to the educational environment," and "[a]dversely affects a child's educational performance." 34 C.F.R. § 300.7(c)(9)(i)-(ii).
After mediation scheduled in response to the request for a due process hearing, Ms. H. signed a form consenting to comprehensive testing for M.H. and a full evaluation. On advice of counsel, however, she later revoked consent for a portion of the evaluation, limiting consent to testing M.H.'s intellectual and information processing abilities, and withholding consent for emotional and behavioral evaluations. Still later, *320 however, Dr. Gillespie, a psychologist in the School Board's employ, told Ms. H. he was concerned that she had withdrawn consent for the full evaluation.
After talking to Dr. Gillespie, Ms. H. consulted her attorney again, who then sent a letter to the School Board, dated October 12, 2004, stating Ms. H.'s desire for a full evaluation of M.H. Although this letter is not in evidence, Ms. Patchen, Director of Exceptional Student Education for the School Board, testified she received the letter and that it indicated that Ms. H. would consent to any testing and implied that Ms. H. would sign any consent form that might be required. Ms. Patchen testified that she did not contact Ms. H. to get another consent form signed, however.
Dr. Todd, the school psychologist who performed the evaluation in November of 2004 because of his expertise in attention deficit disorders, testified that he was told by Ms. Patchen to do only a limited evaluation. Specifically, he testified: "I was told by my supervisor that the attorney for Ms. H.... requested only intellectual and process tests to be done. That was my understanding."
Dr. Todd was unable to conclude whether M.H. qualified for exceptional student education under the IDEA, because he did not undertake a full evaluation when he tested M.H. and concluded that M.H. had normal intelligence.[6] Dr. Todd would have administered other tests and completed other evaluations to ascertain what effect ADHD had on M.H.'s writing,[7] and would have looked at the "secondary effects" of ADHD, if he had been permitted to perform a complete evaluation. The due process hearing was held later in the month, on November 29 and 30, 2004, and eventuated in the order under review, which finds as a matter of fact, and concludes as a matter of law, that the School Board was stymied by the putative lack of M.H.'s mother's consent to a full evaluation.
The order is in error both in finding that Ms. H. did not consent to a full evaluation and in concluding that the School Board did all that was legally required of it. After speaking to Dr. Gillespie, Ms. H. conferred with her attorney, who sent a letter the month before the evaluation took place, to ensure that a full evaluation would be done. As noted, Ms. Patchen, Director of Exceptional Student Education for the School Board, testified that she received the letter and understood Ms. H.'s desire for a full evaluation.[8]
There is a dearth of competent, substantial evidence to support the administrative law judge's finding that M.H.'s mother did *321 not consent to a comprehensive evaluation. See Roderick, 593 So.2d at 1176 ("The appellate court should review the hearing officer's final order by using the competent substantial evidence standard provided in section 120.68."); Cohen ex rel. Cohen v. Sch. Bd. of Dade County, 450 So.2d 1238, 1241 (Fla. 3d DCA 1984) (same). The evidence is not in conflict: Her lawyer expressly consented on her behalf in writing.
Because M.H.'s mother requested special education and consented to a full evaluation, it was incumbent upon the School Board, who had originally itself suggested, albeit not in writing,[9] that M.H. be evaluated, to see that M.H. was evaluated appropriately. Competent, substantial evidence does not support the administrative law judge's finding that the School Board did everything that it could do to this end. In failing to accomplish, indeed preventing, a full evaluation, the School Board did not do "all that can be expected" or all that it was required to do by the Florida Statutes and the Florida Administrative Code.
It is also legally incorrect that M.H.'s rights under the IDEA were or could have been extinguished by his mother's failure immediately to accede to the School Board's every suggestion. See Rowley, 458 U.S. at 205-06, 102 S.Ct. 3034 (explaining that Congress intended to include parents in every step of the decision-making process). "If the parents and school cannot agree on the contents of an IEP, either party may request a due process hearing." Weiss ex rel. Weiss v. Sch. Bd. of Hillsborough County, 141 F.3d 990, 991 (11th Cir.1998).
The IDEA has a "Child find" provision that contemplates the school authorities' putting policies in place to ensure that "[a]ll children with disabilities residing in the State, including children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated...." 20 U.S.C. § 1412(a)(3)(A); see also 34 C.F.R. § 300.125(a)(1)(i). Florida Administrative Code Rule 6A-6.0331 makes local school boards responsible "to ensure that students suspected of having a disability ... are identified, evaluated, and provided appropriate specially designed instruction and related services if it is determined that the student meets the eligibility criteria...."
Although the School Board identified M.H. as having problems and recommended that he be evaluated, it did not provide any written information or furnish copies of the procedural safeguards to M.H.'s mother. The School Board made no formal written referral for evaluation, and did not document any attempts to obtain consent from a parent. These omissions violated procedural provisions of applicable law.[10]See Fla. Admin. Code R. *322 6A-6.03311(1)-(2)(c) (2003) (requiring school board to provide a copy of procedural safeguards to parent); id. at R. 6A-6.0331(3) (describing circumstances in which school board may make referral for an evaluation, which must be in writing); id. at R. 6A-6.03311(3)(c) (requiring school board to document attempts to obtain consent). In these particulars, too, it cannot be said that the School Board did all that it could have done.
Here, as in T.S. v. Gadsden County School Board, Fla. Admin. Order No. 99-4932E, 7 (Jan. 25, 2000) (on file with Clerk, Div. Admin. Hearings), the evidence "constitutes a sufficient basis to establish [the School Board's] responsibility for further testing and evaluation ... to determine [M.H.'s] eligibility for special education and related services." We confront the first question identified by the Rowley court, but cannot decide the second question, until and unless an individualized educational plan has been developed:
First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?
458 U.S. at 206-07, 102 S.Ct. 3034 (footnote omitted). The School Board's own witness testified M.H. needed a more comprehensive evaluation to ascertain whether the ADHD from which M.H. (who the School Board concedes is handicapped) suffers adversely affects his educational performance. In truncating this evaluation, the School Board did not comply with statutory and rule procedures enacted and adopted to implement the IDEA, including Florida Administrative Code Rules 6A-6.0331 and 6A-6.03311.
Accordingly, we reverse and remand with directions that the administrative law judge order the School Board to perform a full and complete evaluation of M.H. and to provide any appropriate specialized instruction and related services to which an adequate evaluation may show M.H. is entitled.
PADOVANO and BROWNING, JJ., concur.
NOTES
[1] A free appropriate public education "provided under the Act does not require the states to satisfy all the particular needs of each handicapped child," Cohen ex rel. Cohen v. Sch. Bd. of Dade County, 450 So.2d 1238, 1241 (Fla. 3d DCA 1984), but must be designed to afford the child a meaningful opportunity to learn. See Sch. Bd. of Lee County v. S.W., 789 So.2d 1162, 1166 (Fla. 2d DCA 2001); Sch. Bd. of Martin County v. A.S., 727 So.2d 1071, 1074 (Fla. 4th DCA 1999) ("Educational benefits provided under IDEA must be more than trivial or de minimis. J.S.K. v. Hendry County Sch. Bd., 941 F.2d 1563 (11th Cir.1991); Doe v. Alabama State Dep't of Educ., 915 F.2d 651 (11th Cir.1990). Although they must be `meaningful,' there is no requirement to maximize each child's potential."); Hendry County Sch. Bd. v. Kujawski, 498 So.2d 566, 568 (Fla. 2d DCA 1986).
[2] Screening for speech, language, hearing and vision, and "[a] minimum of two (2) general education interventions or strategies, shall be attempted. These general education interventions or strategies may include: supplemental academic instruction; change in student's class schedule or teacher; change in instructional strategies and techniques; interventions provided by student services personnel or state or community agency." Fla. Admin Code R. 6A-6.0331(2)(e)-(f) (2003). If the intervention strategies do not work, the student should be referred for an evaluation. "Referral is the process whereby a written request is made for a formal individual evaluation to determine a student's eligibility for specially designed instruction and related services." Id. at R. 6A-6.0331(3). At least two people, one of whom teaches the student, must indicate that a referral is needed. Id. at R. 6A-6.0331(2)(b).
[3] The School Board concedes that M.H. is "handicapped" within the meaning of the Rehabilitation Act of 1973, see 34 C.F.R. § 104.3(j)(1), but not that he is "disabled" under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.
[4] Section 504 is a reference to the Rehabilitation Act of 1973, which is not at issue in these proceedings. See 34 C.F.R. § 104.3(a)-(b).
[5] On January 6, 2004, another meeting was held to review and modify M.H.'s Section 504 Accommodation Plan. As a result, the Plan added: additional assessment through assistive technology; permitting more space on exams for M.H.'s written responses; cuing M.H. to stay on task; and implementation of a classroom behavior system for M.H.
[6] In response to questioning at the due process hearing, Dr. Todd testified, as follows:

Q .... According to the procedures, we have to conduct referralsevaluations of referralsis that we look at the reason for the referral, and then we come up with a battery of tests that hopefully will address the problem.
When Ms. Patchen asked me to review the referral in mid-September, I gave her or I e-mailed her a list of tests that I thought were necessary in order to arrive at a diagnosis.
Q And did you complete those tests?
A No, I did not.
....
Q And what would you need in order to make that diagnosis?
A I would have to complete the entire evaluation.
[7] The letter counsel wrote on M.H.'s behalf on August 9, 2004, specifically asked that M.H. "be evaluated to rule in or out a disorder of written expression, a DSM-IV diagnosis, 315.2."
[8] Apparently Ms. H. did not actually execute a new consent form, but the School Board never informed her that it desired or required a new consent form, nor did anybody ever ask her to sign an additional consent form.
[9] At no time did the school make a written request to have M.H. evaluated for possible provision of special education and related services. Florida Administrative Code Rule 6A-6.0331, provides that "[l]ocal school boards have the responsibility to ensure that students suspected of having a disability ... are identified, evaluated, and provided appropriate specially designed instruction and related services if it is determined that the student meets the eligibility criteria...." For students in kindergarten through twelfth grade, "[i]t is the local school board's responsibility to address through appropriate interventions and, to the extent possible, resolve a student's learning or behavioral areas of concern in the general education environment prior to a referral for evaluation to determine eligibility as a student with a disability." Id. at R. 6A-6.0331(2).
[10] The United States Supreme Court has held that the procedural safeguards in the Act are as important as the substance of the Act. See Rowley, 458 U.S. at 205-06, 102 S.Ct. 3034. The failure to perform the evaluation necessary to ascertain M.H.'s eligibility for special education is a far cry from the technical failure to give notice to parents who actually had notice which was held not to merit relief in Doe v. Alabama State Department of Education, 915 F.2d 651, 661-63 (11th Cir.1990).