[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15483

_____

D.C. Docket No. 1:11-cv-00727-TWT

K.A., a minor, by and through her parents
and next friends, F.A. and A.A. and F.A. and K.A.,

Plaintiff - Appellant,

versus

FULTON COUNTY SCHOOL DISTRICT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 20, 2013)

Before PRYOR, JORDAN and KLEINFELD,* Circuit Judges.

KLEINFELD, Circuit Judge:

_____

* The Honorable Andrew J. Kleinfeld, United States Circuit Judge for the Ninth Circuit,
sitting by designation.

This is a challenge to the procedures a school district used in developing and changing an individualized education program for a disabled child.

## I. FACTS

The schoolchild, K.A., has Down's Syndrome. Her condition is not as disabling as that genetic disorder is for some, so her parents think she can benefit from some classes that include children without disabilities. She has been classified as having a "mild intellectual disability" and a "speech-language impairment."

Under the Individuals with Disabilities Education Act (IDEA), K.A. is entitled to a "free appropriate public education" implemented through an "individualized education program" (IEP). After repeating kindergarten, the school district and her parents got together during the spring of her second kindergarten year and designed a one-year individualized education program for first grade, as they had for kindergarten. The first-grade IEP put her in regular classes for some subjects, and in special classes for others.

2

Once first grade started the following August, her teachers said she was disruptive and having difficulty keeping up with the curriculum. The school district met with the parents to discuss the problems and the IEP. The school personnel wanted her to be less "mainstreamed," that is, to have more time in special classes with other disabled children and less in regular classes. Most significantly, they wanted to transfer her to a different elementary school and place her in a "mildly intellectually disabled" program. Her parents did not agree. They wanted to keep her in the same school, have the school assign an aide to her, and give her more time to adjust.

Before finalizing their disagreement or the school district's plan, the parents requested and the district agreed to an opportunity for them to observe what would be their daughter's new school. They did so, and concluded that she would be better off staying in the same school. They thought the new school was too far from where they lived, and that their daughter's social skills would suffer in the less mainstreamed program. The parents and school personnel had a "team meeting" to discuss the IEP. The school district decided over the parents' objections to amend the IEP and require the child to attend the new school and the less mainstreamed program.

3

The IDEA has a procedure in which the parents or school district may "present" a complaint if they are dissatisfied with the individualized education program the team adopts. The child stays put in the old school under the old IEP until the complaint is resolved. The parents presented a complaint against implementation of the new IEP, the "stay put" provision went into effect, and K.A. stayed at her school under the old IEP through the end of the school year when the IEP expired.

The parents went through the appellate process provided for by the statute: a "due process hearing" before an independent hearing officer, followed by an appeal to a federal district court. The hearing officer dismissed their claims, and the district court granted summary judgment in favor of the school district. The parents challenge the procedures used to adopt the new IEP, not its substance. The parents' issues on appeal boil down to the following: (1) K.A.'s parents were deprived of prior written notice and notice of their procedural rights as required by the IDEA; (2) the school district, not the parents, should have had to request a due process hearing and defend the proposed IEP; (3) the district court applied the wrong standard of review to the hearing officer's decision and ought to have taken additional evidence; and (4) the parents are entitled to relief under 42 U.S.C. §

4

1983 because the school district's actions violated their rights under the IDEA and the Constitution.

## II. ANALYSIS

*A. Mootness*

Because first grade and the one-year IEP at issue is over, the first issue is whether the parents' challenge is moot. We conclude that it is not, under the "capable of repetition, yet evading review" exception to the general rules for mootness.[1] The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[2] A reasonable expectation is "more than a mere

---

[1] Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008).

[2] Id.

5

possibility that the conduct at issue will recur, but far less than absolute certainty."[3]

The Supreme Court held in Honig v. Doe,[4] a case under the Education of the Handicapped Act, the materially similar predecessor statute to the IDEA, that because the conduct giving rise to the dispute in that case was reasonably likely to recur and the administrative and judicial process was too "ponderous" for meaningful and timely review ever to take place, the "capable of repetition, yet evading review" exception applied.  Honig controls this case.

The first requirement is satisfied, because disputes over individualized education programs are generally too short in duration to be fully litigated prior to cessation or expiration.[5]  IEPs typically last for only one year, as this one did, and judicial review of a challenged program "invariably takes more than nine months to complete, not to mention the time consumed during the preceding state

---

[3] Bourgeois v. Peters, 387 F.3d 1303, 1309 (11th Cir. 2004) (quotation marks omitted).

[4] 484 U.S. 305, 317-23 (1988).

[5] See id. at 322-23.

6

administrative hearings."[6]  The "ponderous" administrative and judicial review process measured against the brevity of a school year to which an IEP applies satisfies the shortness of time requirement for the mootness exception.

The likelihood of recurrence requirement is satisfied because there is a reasonable expectation that the school district will seek to amend K.A.'s IEP in the future, with less mainstreaming and possibly a different school, while the parents will want more mainstreaming at the same school.  The parents will have the same procedural objections that they raise in this case.

The case for recurrence is stronger here than in Honig and it was strong enough there.  In Honig, an emotionally disturbed student was suspended for misbehavior.  The Court thought he was likely enough to misbehave again so the "capable of repetition" requirement was satisfied.[7]  His future misbehavior was, as the dissent pointed out, at least somewhat speculative.[8]  By contrast, K.A. has a genetic defect, trisomy 21 (Down's Syndrome), which will not change and will

---

[6] Bd. of Educ. v. Rowley, 458 U.S. 176, 186 n.9 (1982).

[7] Honig, 484 U.S. at 318-22.

[8] Id. at 337-38 (Scalia, J., dissenting).

cause educability difficulties throughout her schooling.  K.A. has many years of schooling left.  Her parents are intensively involved in her education, and there is no reason to think that their devotion to their daughter realizing what potential she has will diminish.  Nor is there any reason to doubt that the school district's concern with her effect on other students and the demands her needs place on the school will diminish.

The school district has not disclaimed the possibility of changing her placement when this litigation ends.[9]  K.A.'s 2011 IEP, subsequent to the one at issue here,  said that she was "significantly below grade level," and the team meeting minutes show that her parents and school personnel continue to disagree on how best to educate her.  We are likely looking at the same procedural battle between her school and her parents every year, devolving into complaints, "stay put" requirements, and appellate processes addressing the year already past, until one side or the other gives up.

---

[9] Compare Sacramento City Unified Sch. Dist. v. Rachel H., 14 F.3d 1398, 1403 (9th Cir. 1994) (holding that a case was not moot because the school district and the parents had conflicting views on mainstream placement that were "continuing . . . and [would] arise frequently"), with Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ., 397 F.3d 77, 87-89 (2d Cir. 2005) (finding that an IEP challenge was not capable of repetition in part because the school district acknowledged that the child had flourished in the placement plaintiffs wanted for him and had no plans to move the child).

Thus, even though the school year that the challenged IEP applied to is over, the issues raised fall within the "capable of repetition, yet evading review" exception to mootness.  K.A.'s case is not moot, so we have jurisdiction to address the merits.

B.  *The IDEA Statutory Scheme*

The scheme for establishing and amending individualized education programs is set out in a detailed, complex statute, the Individuals with Disabilities Education Act at 20 U.S.C. § 1400 et seq.  The basic structure is that after a child is classified (as K.A. has been) as disabled, the local education agency must develop an individualized education program for the particular child, with a duration from one to three years.[10]  The IEP is a written statement that describes the child's academic performance and how the child's disability affects her education, states measurable educational goals and special needs of the child, establishes how the child's progress will be measured and reported, and states the services available, based on peer-reviewed research, to enable the child to attain the goals, advance educationally, and participate with disabled and nondisabled

---

[10] 20 U.S.C. § 1414(d)(2)(a), (d)(4), (d)(5).

children.[11]  The point of the entire complex procedural apparatus is to provide what the statute terms a "free appropriate public education"[12] for disabled children.

Every step in the child's progress through school, under the IEPs and amendments that will be adopted from time to time, involves the child's parents. The school districts are not to proceed on their own.  Instead, decisions are made by an "IEP Team," whose membership is statutorily defined, with the first members of the team to be the parents.[13]  The Supreme Court in Schaffer v. Weast described "the cooperative process . . . between parents and schools" as "[t]he core of the statute."[14]  "Congress repeatedly emphasized throughout the [IDEA] the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness."[15]

---

[11] Id. § 1414(d)(1)(A)(i).

[12] Id. § 1401(9) ("The term 'free appropriate public education' means special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.").

[13] Id. § 1414(d)(1)(B).

[14] 546 U.S. 49, 53 (2005).

[15] Honig, 484 U.S. at 311.

10

Parents are not mere spectators, or spectators with a right to complain and seek redress, of school district personnel who establish programs for their disabled children. They are full participants in the process. This makes practical sense, as well as providing a decent level of respect for the views of a disabled child's parents. School districts employ professionals trained in educating children with disabilities and designing appropriate programs with the benefits of educational research literature. But parents have knowledge that schools lack about their own children. A teacher knows how a child functions in class, but no school district employee or consultant shares the parents' knowledge of the history, temperament, behavior, general abilities, and problems of their particular child. For example, a parent can say whether a child who is apparently not expressive at school cries every afternoon when she comes home, or whether a child who says "I can't" for tasks at school actually will perform them at home if the child is encouraged, or if the tasks are broken down into smaller steps. Much as a physician benefits in a way that a veterinarian cannot, from hearing how the patient's condition has manifested itself and the details of the condition outside her office, a school's evaluation and development of a program for a disabled child benefits from acquiring the active participation of the parents.

11

The process for developing individualized education programs is that a team consisting of the parents, regular and special education teachers, a school district expert in designing such programs, and others with useful expertise meet and agree upon a program.[16]  If changes are needed before the IEP expires, amendments may be made either by a reconvened team, or by a written agreement between the parents and the school district.[17]  The statute does not say whether the team must act by consensus, majority vote, or otherwise.  Any party may "present a complaint" setting forth an alleged violation with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.[18]  The parents and the school district involved in the complaint "have an opportunity for an impartial due

---

[16] 20 U.S.C. § 1414(d)(1)(B), (d)(3).

[17] Id. § 1414(d)(3)(F) ("Amendments: Changes to the IEP may be made either by the entire IEP Team or, as provided in [§ 1414 (d)(3)(D)], by amending the IEP rather than by redrafting the entire IEP.") Section 1414(d)(3)(D) provides: "Agreement: In making changes to a child's IEP after the annual IEP meeting for a school year, the parent of a child with a disability and the local educational agency may agree not to convene an IEP meeting for the purposes of making such changes, and instead may develop a written document to amend or modify the child's current IEP."

[18] Section 1415(b)(6) states that a State must provide:  "An opportunity for any party to present a complaint–
    (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and
    (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint . . . ."

process hearing"[19] before a hearing officer if they have not "resolved the complaint to the satisfaction of the parents within 30 days."[20] The hearing officer must not be an employee of the state or the local educational agency involved in the education or care of the child or a person with a personal or professional interest conflicting with his objectivity.[21] At any "impartial due process hearing" parties are entitled to "present evidence and confront, cross-examine, and compel the attendance of witnesses."[22] Aggrieved parties may file civil actions in state or federal court, with the court to hear additional evidence and grant relief in its discretion basing its decision on a preponderance of the evidence.[23] With some exceptions, "the child shall remain in the then-current educational placement" during the pendency of this lengthy process (the "stay-put" provision).[24] This

---

[19] Id. § 1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.").

[20] Id. § 1415(f)(1)(B)(ii).

[21] Id. § 1415(f)(3)(A)(i).

[22] Id. § 1415(h)(2).

[23] Id. §1415(i)(2).

[24] Id. § 1415(j) ("Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child. . . .").

elaborate and extended procedure (which may apply to a past violation within two years of the complaint) establishes the need for the "capable of repetition, yet evading review" mootness exception where the complaint challenges an amendment to the child's program.

K.A.'s parents argue that the school district did not comply with the IDEA's procedural requirements. They do not challenge the substance of their daughter's individualized education program or the amendment. Their arguments go only to procedure.

*C. IDEA Notice Requirements*

In order for the parents to effectively participate in and contribute to the process of developing an appropriate IEP for their child, they need to know what the school proposes to do and why, and what has been going on with the child at school. Therefore, before a team meeting at which the school district proposes to adopt or amend an individualized education program, the school district must provide the parents with: (1) prior written notice that explains what the school district proposes to do and why, the factors that are relevant to the proposal, a

14

description of the evaluative methods and results the school district used as a basis

for the proposed action, and a description of other options that were considered

and the reasons why they were rejected;[25]   (2) an opportunity to review all records

pertaining to their child;[26] and (3) a full explanation of their rights, including their

rights to participate, object, and appeal.[27]

---

[25] Section 1415(b)(3) requires schools to provide: "Written prior notice to the parents of the child, in accordance with subsection (c)(1), whenever the local educational agency-- (A) proposes to initiate or change; or (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child."

Section 1415(c)(1) states: "(c) The notice required by subsection (b)(3) shall include–
(A) a description of the action proposed or refused by the agency;
(B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
(C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
(D) sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
(E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
(F) a description of the factors that are relevant to the agency's proposal or refusal."

[26] Section 1415(b)(1) requires school districts to provide: "An opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child."

[27] Id. § 1415(d)(1)(A) ("[a] copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents . . . . The procedural safeguards notice shall include a full explanation of the procedural safeguards . . . available under this section and under regulations promulgated by the Secretary . . .  relating to–
(A) independent educational evaluation;

K.A.'s parents argue that they did not receive adequate prior written notice of the school district's proposed amendment to K.A.'s IEP, and that the notice of procedural safeguards provided by the school district did not provide a full explanation of their rights. Whether the information that the school district provided to K.A.'s parents complied with the IDEA's requirements is a mixed question of law and fact, so we review de novo.[28]

Notice may have been inadequate under the statute and regulations. The school district did not provide prior written notice before the team meeting. The

---

(B) prior written notice;
(C) parental consent;
(D) access to educational records;
(E) the opportunity to present and resolve complaints, including--
    (i) the time period in which to make a complaint;
    (ii) the opportunity for the agency to resolve the complaint; and
    (iii) the availability of mediation;
(F) the child's placement during pendency of due process proceedings;
(G) procedures for students who are subject to placement in an interim alternative educational setting;
(H) requirements for unilateral placement by parents of children in private schools at public expense;
(I) due process hearings, including requirements for disclosure of evaluation results and recommendations;
(J) State-level appeals (if applicable in that State);
(K) civil actions, including the time period in which to file such actions; and
(L) attorneys' fees.").

[28] Loren F. ex rel Fisher v. Atlanta Indep. Sch., 349 F.3d 1309, 1313 (11th Cir. 2003).

16

school district argues that it satisfied the notice requirement after the team meeting by providing K.A.'s parents with copies of the team meeting minutes, the old IEP and the amendment, and K.A.'s educational records. These documents, however, were provided not all at once, and only after K.A.'s father requested them multiple times.

Nevertheless, we are unable to identify any prejudice to K.A. or her parents from any defects in notice or the delay in furnishing K.A.'s records. "Violation of any of the procedures of the IDEA is not a per se violation of the Act."[29] In Doe v. Alabama, we held that the notice deficiencies in that case had no impact on the parents' "full and effective participation" in the IEP process," so the "purpose of the procedural requirement was fully realized," and any technical violation was not sufficient to warrant relief.[30] We reaffirmed this holding in Weiss v. School Board of Hillsborough County where we held that parents were not entitled to relief on their claims that their child's school board violated the IDEA's procedures, including notice requirements, because the facts did not "show that

---

[29] Weiss v. Sch. Bd. of Hillsborough Cnty., 141 F.3d 990, 996 (11th Cir. 1998).

[30] 915 F.2d 651, 662 (11th Cir. 1990).

17

[the] procedural defects resulted in harm to [the child], or restricted the [parents'] ability to participate fully."[31]

The parents have not identified anything they would have done differently, any evidence they would have introduced, or any contribution they might have made, had all the required records and notice been provided to them a reasonable time before any of the team meetings. K.A.'s parents were informed about a month before the proposed amendment was scheduled to take place that the school district wanted to move K.A. to another school and put her in a less mainstream classroom. The parents participated in two team meetings discussing the amendment and observed the new school. The school district provided K.A.'s parents with a Parents' Rights document that described the procedural safeguards available to parents under the IDEA. The school district extended K.A.'s time at her old school by a week so that it could seek to resolve the parents' concerns. The parents eventually obtained all of K.A.'s records, IEPs, and the team meeting minutes. The parents' participation was full and effective, and they do not claim that any procedural violations harmed K.A.. We need not decide whether the

---

[31] Weiss, 141 F.3d at 997.

18

various notice requirements were satisfied, because whatever notice deficiencies there may have been in this case, they do not warrant relief.

D. IEP Amendments

All members of the IEP team, including K.A.'s parents, agreed on the first grade IEP that they established during the spring of K.A.'s kindergarten year. The school district sought to amend K.A.'s IEP about a month after she started first grade. K.A.'s parents did not agree to the amendment. The school district held a team meeting and the team adopted the amendment. The school district told the parents that the amendment would go into effect, unless the parents presented a complaint and requested a due process hearing.

The statute provides that an individualized education program may be amended either by the "entire IEP Team," or without a team meeting if the parents agree.[32] The amendment procedures are set forth in 20 U.S.C. § 1414(d)(3)(D) and (F). Section 1414(d)(3)(D) provides:

---

[32] 20 U.S.C. § 1414(d)(3)(D), (F).

19

Agreement: In making changes to a child's IEP after the annual IEP meeting for a school year, the parent of a child with a disability and the local educational agency may agree not to convene an IEP meeting for the purposes of making such changes, and instead may develop a written document to amend or modify the child's current IEP.

Section 1414(d)(3)(F) states:

Amendments: Changes to the IEP may be made either by the entire IEP Team or, as provided in [§ 1414 (d)(3)(D)], by amending the IEP rather than by redrafting the entire IEP.

The school district argues that the IEP team can amend an IEP at a team meeting even if the parents do not consent to the proposed change. K.A.'s parents apparently agree with the school district, because they do not claim a right to veto a proposed amendment. They concede that "neither side has a 'veto' in a collaborative process mid-year, and each has the right to decide the importance of the change and use the dispute resolution mechanism to resolve it."

We agree, and read the statute to mean that the IEP team can amend an individualized education program at a team meeting, even if the parents do not consent. The statute expressly requires parental consent for a written amendment when there is no team meeting, and conspicuously omits a requirement of parental consent if the IEP is amended at a team meeting. This omission is best read as

20

implying a negative pregnant, that parental consent is not required if the team adopts an amendment at a team meeting. The fact that parental consent is explicitly required elsewhere in section 1414 supports our interpretation. Parental consent is required before a school district can evaluate a child for the first time,[33] before a school district can reevaluate a child,[34] and before an IEP team member can be excused from attending an IEP team meeting.[35] "As this Court has emphasized, '[w]here Congress knows how to say something but chooses not to, its silence is controlling.'"[36] We agree with the Seventh Circuit (and K.A.'s parents do not dispute) that the parents do not have a veto.[37]

But this is not the end of our analysis. K.A.'s parents argue that, if the parents do not agree to an amendment, the school district must present a complaint, request a due process hearing, and bear the burden of proof at the hearing before the amendment can be implemented. We disagree.

-------

[33] Id. § 1414 (a)(1)(D).

[34] Id. § 1414 (c)(3).

[35] Id. § 1414(d)(1)(C)(ii)(I).

[36] United States v. Webb, 655 F.3d 1238, 1257 (11th Cir. 2011) (quoting In re Griffith, 206 F.3d 1389, 1394 (11th Cir. 2000) (en banc)).

[37] Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist., 507 F.3d 1060, 1066 (7th Cir. 2007).

21

We are unable to identify anything in the statute that suggests Congress intended to require school districts to present a complaint and prevail at a due process hearing in order to amend an IEP if the parents do not consent. The regulations are also silent on this issue. In light of the IDEA's lengthy and excruciatingly detailed procedural protections, we decline to read into the statute a significant procedural requirement that Congress did not express.

> Section 1415(b)(6) provides that a State must give:
>
> An opportunity for any party to present a complaint –
>
> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and
>
> (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint.

Section 1415(f)(1)(A) says that:

> [w]henever a complaint has been received under subsection (b)(6) . . . the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

Congress amended the IDEA in 2004 to clarify that both a parent and a local educational agency have "an *opportunity*" to present a complaint and have a due process hearing.[38]  While the statute says that a school district may present a complaint, it does not say that school districts are ever required to do so.  The IDEA specifically states that school districts can present a complaint and request a due process hearing in certain circumstances.  When "the parent of [a child who may be disabled] does not provide consent for an initial evaluation . . . or the parent fails to respond to a request to provide the consent, the local educational agency may pursue the initial evaluation of the child by utilizing the procedures described in section [1415] of this title."[39]  The statutory provisions that specifically address IEP amendment procedures allow a school district to amend an IEP at a team meeting without parental consent.  The statute is silent as to whether the school must first present a complaint and prevail at a due process hearing before the amendment is valid.  The parents' proposed interpretation has no support in the complex and detailed statutory provisions enacted by Congress and would effectively foreclose any changes to the IEP by the team without the

---

[38] S.Rep. No. 108-185, p. 36-37 (2003) (emphasis added).

[39] 20 U.S.C. § 1414(a)(1)(D)(ii)(I).

23

parents' consent.  That result would be inconsistent with the absence of a requirement of parental consent if the team amends the IEP.

K.A.'s parents argue that the Supreme Court's decision in Schaffer v. Weast[40] resolves this question in their favor.  In Schaffer, parents were dissatisfied with the initial IEP that a school district proposed for their son, so they enrolled him in private school and sought compensation for the private school tuition by challenging the proposed IEP for denying their son a free appropriate public education.  The issue in Schaffer was whether the parents or the school district bore the burden of proof to show the inadequacy of the IEP.[41]  The Supreme Court held that the "burden of persuasion lies where it usually falls, upon the party seeking relief."[42]  The parents claimed that the IEP was inadequate and sought compensation for private school tuition, so they had the burden of proof.

---

[40] 546 U.S. 49 (2005).

[41] Id. at 56, 62.

[42] Id. at 56.

24

The parents in Schaffer were the "party seeking relief," because they challenged the IEP.[43]  Likewise, K.A.'s parents are the party challenging the IEP amendment and claiming that the school district violated the IDEA's procedural requirements.  They are the "party seeking relief," because they asked the hearing officer to set aside the amended IEP.  For the parents to have the burden of presenting a complaint, requesting a due process hearing, and proving their case is consistent with the holding in Schaffer.

K.A.'s parents, though, do have a colorable argument under dicta in Schaffer that says:

> If parents believe that an IEP is not appropriate, they may seek an administrative "impartial due process hearing." § 1415(f). School districts may also seek such hearings . . . They may do so, for example, if they wish to change an existing IEP but the parents do not consent, or if parents refuse to allow their child to be evaluated.[44]

We reject K.A.'s parents' argument that the language above means that school districts must always seek a due process hearing if they want to amend an IEP over parents' objections.  The question at issue in Schaffer was which party bears the

---

[43] Id. at 62.

[44] Id. at 53.

25

burden of proof, not which party must present a complaint and seek a due process hearing.  Whether the parents could recover private school tuition turned on whether they could prove by a preponderance of the evidence that the IEP did not provide an appropriate education for their child.  The Court had no reason to address whether the school district or the parents had the burden of proving noncompliance with amendment procedures.  Requiring the school to make a complaint about the team's amendment would be inconsistent with the authority the statute confers on the team to make an amendment.

This reading of the IDEA does not deprive parents of a voice in their child's education.  K.A.'s parents were notified of the proposed change and given an explanation for the amendment, they participated extensively in the team meetings, they received K.A.'s educational records, and they were notified of their procedural rights, including the right to challenge the amendment by presenting a complaint and requesting a due process hearing.  The parents presented a complaint to invoke the "stay-put" provision, and K.A. remained at her old school.  We are unable to identify any error in requiring the parents to present a complaint and demand a due process hearing, since they disagreed with the team decision.

*E. District Court Standard of Review*

K.A.'s parents argue that the district court erred in applying the summary judgment standard laid out in Loren F. ex rel. Fisher v. Atlanta Independent School System[45] to their claims. They argue that the district court should have applied F.R. Civ. P. 56 summary judgment standards when reviewing the due process hearing officer's summary determination, because they were not given a full opportunity to present evidence and cross-examine witnesses. For the same reason, they argue that the district court should not have given deference to the hearing officer's findings.

In Loren F., we explained that

summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence. . . . That means that the usual F.R. Civ. P. 56 summary judgment principles do not apply in an IDEA case. This is not surprising, because no IDEA jury trial right exists.[46]

---

[45] Loren F., 349 F.3d at 1313.

[46] Id.

We see no reason to depart from the Loren F. standard when the hearing officer has granted summary determination. In Loren F., the hearing officer had also decided the case on summary determination.[47]

There were no significant factual disputes for the district court to decide, and the court had no occasion to defer to or reject the hearing officer's factual findings. The parents do not identify any evidence they might have submitted that would have established a genuine issue of fact regarding their claims. The parents' arguments are purely legal. It is also undisputed that K.A.'s parents were notified of the proposed change, attended two IEP meetings at which the school discussed amending K.A.'s IEP, observed at the new school where K.A. would have been placed, received all of K.A.'s records, and presented a complaint. Any defects in the notice given to K.A.'s parents did not significantly impede the parents' participation in the IEP process. The district court correctly stated the Loren F. standard, fully reviewed the administrative record, and independently analyzed each of the parents' claims. Its application of the Loren F. standard was not erroneous.

---

[47] Id. at 1316 n.6.

28

*F. Additional Evidence*

The IDEA states that on appeal of a due process hearing, the district court "shall receive the records of the administrative proceedings [and] shall hear additional evidence at the request of a party. . . ."[48]  K.A.'s parents and the school submitted cross-motions for summary judgment to the district court.  Parents then submitted a motion for a scheduling order on the cross-motions for summary judgment.  They attached a proposed order, later issued by the district court, which stated that "motions for additional evidence under the IDEA and any pretrial order are held in abeyance until the Court resolves the cross-motions for summary judgment."  Parents now claim that when the district court issued this order it violated the statute.

The district court has discretion to determine whether or not to allow parties to supplement the administrative record in IDEA cases.[49]  "Despite the fact that the statute says the district court 'shall hear additional evidence at the request of a party,' we have not previously read that as a mandate to take additional evidence

---

[48] 20 U.S.C. § 1415(i)(2)(C).

[49] Walker Cnty. Sch. Dist. v. Bennett, 203 F.3d 1293, 1298 (11th Cir. 2000) (quoting Town of Burlington v. Dep't of Educ., 736 F.2d 773, 791 (1st Cir. 1984)).

any time a party so requests. A district court is permitted to accept additional evidence, but is not required to do so."[50] Had K.A.'s parents proffered evidence, the district court and we would have been presented with a different case, probably one involving the appropriateness of the IEP or prejudice from some defect in the notice. As this purely legal case was presented, the district court did not abuse its discretion when it issued the parents' proposed order and then decided the case on summary judgment.

*G. 42 U.S.C. § 1983 Claims*

We review de novo the district court's grant of summary judgment on parents' section 1983 claims.[51] The district court ruled that parents could not sue under section 1983 for IDEA statutory violations, because the IDEA contains a comprehensive enforcement scheme. We join the First, Third, Fourth, Ninth, and Tenth Circuits, and hold that section 1983 actions for denial of rights conferred by the IDEA are barred because the IDEA's comprehensive enforcement scheme

---

[50] G.J. v. Muscogee Cnty. Sch. Dist., 668 F.3d 1258, 1268 (11th Cir. 2012).

[51] McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1242-43 (11th Cir. 2003).

30

provides the sole remedy for statutory violations.[52]  Were there some right at issue conferred by the Constitution or other federal laws and not by the IDEA, we would be presented with a different question.  The claims in this case though are entirely based on rights arguably conferred by the IDEA.

In Smith v. Robinson,[53] the Supreme Court held that a handicapped child could not pursue a section 1983 action under the Equal Protection Clause because the IDEA's predecessor statute, the Education of the Handicapped Act, provided a comprehensive alternate enforcement scheme.  In response, Congress amended the Act, including what is now 20 U.S.C. § 1415(l).  Section 1415(l) states:

> "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities . . . ."

---

[52] Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 29 (1st Cir. 2006) ("We hold that where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983–or any other federal statute for that matter–in an attempt to evade the limited remedial structure of the IDEA."); AW v. Jersey City, 486 F.3d 791, 803 (3d Cir. 2007) (en banc); Sellers v. Sch. Bd. of Manassas, Va., 141 F.3d 524, 529-531 (4th Cir. 1998); Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir. 2007);  Padilla v. Sch. Dist. No. 1 in Denver, 233 F.3d 1268, 1273 (10th Cir. 2000).  The Second and Seventh Circuits hold that plaintiffs can bring § 1983 claims for IDEA violations.  Mrs. W. v. Tirozzi, 832 F.2d 748, 755 (2d Cir. 1987); Marie O v. Edgar, 131 F.3d 610, 621 (7th Cir. 1997).

[53] 468 U.S. 992, 1013 (1984).

31

We agree with the Fourth Circuit's interpretation of section 1415(l):

> [b]y preserving rights and remedies "under the Constitution," section [1415(l)] does permit plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA. But section [1415(l)] does not permit plaintiffs to sue under section 1983 for an IDEA violation, which is *statutory* in nature. Nothing in section [1415(l)] overrules the Court's decision in Smith to the extent it held that Congress intended IDEA to provide the sole remedies for violations of the same statute.[54]

K.A.'s parents argue that the school deprived them of their constitutional right to due process when the school refused to request a due process hearing, citing our decision in Manecke v. School Board of Pinellas County.[55] In Manecke, a school district refused to schedule a due process hearing for more than a year, even though the plaintiffs had presented a complaint and requested a due process hearing. We held that the parents' constitutional due process rights were violated, because they were denied access to a due process hearing.[56] The school district in this case, however, did not deny K.A.'s parents a due process hearing. K.A.'s parents presented a complaint, had their case heard by a hearing officer, appealed

---

[54] Sellers, 141 F.3d at 530 (emphasis in original).

[55] 762 F.2d 912 (11th Cir. 1985).

[56] Id. at 919.

32

to the district court, and are now before us.  The district court did not err in dismissing the parents' section 1983 claims.

## III.  CONCLUSION

Conscientious parents have a legitimate interest in securing the best education their child can absorb.  School districts have a legitimate interest in providing appropriate education for disabled children, while assuring that appropriate education for other children does not unduly suffer from disruption or expense.  These legitimate interests are in tension, but somehow must be balanced. The statutory scheme as explained above appears to be a practical way to do that.

**AFFIRMED.**