**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 24-11410

———————————————

C.B.,
   by and through K.B. and S.B.,
K.B.,
S.B.,

*Plaintiffs-Appellants,*

*versus*

HENRY COUNTY SCHOOL DISTRICT,

*Defendant-Appellee.*

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01771-JPB

———————————————

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

KIDD, Circuit Judge:

C.B. is a student with Down syndrome who attends school in the Henry County School District in Georgia. Because C.B. has Down syndrome, the Individuals with Disabilities Education Act required Henry County to develop an individualized education program for C.B. and to discuss the program with C.B.'s parents. After assessing C.B.'s progress in school, Henry County decided to move C.B. from one special education class to another. C.B.'s parents were dissatisfied with the new placement, so they sought a hearing before an administrative law judge. Over the course of five days, the judge heard testimony from several witnesses, including C.B.'s parents, teachers, and multiple experts. The judge found that Henry County had complied with the law in making C.B.'s placement decision. The district court declined to disturb that decision. On appeal, so do we.

C.B. also challenged Henry County's decision to place him on an alternative assessment track for his educational goals. The district court found that C.B.'s challenge to his alternative assessment placement was moot. We disagree with that conclusion and remand the case to the district court to consider the alternative assessment claim.

## I. BACKGROUND

C.B.'s education is covered by the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1482 ("IDEA"). The IDEA required Henry County to develop an individualized education program ("IEP") for C.B. The IEP must describe C.B.'s present

levels of performance, his goals and objectives, his educational services, and the support and accommodations that he receives.

C.B. was in the fourth grade at the time material to this appeal (except for the alternative assessment claim, which we will discuss later). Henry County placed C.B. in general education classes for art, music, and physical education; general education classes with paraprofessional support for science and social studies; and an interrelated resource class ("IRR") for language arts and math. The IRR class was a small, group instructional setting for students with disabilities. The disabilities of the students in the IRR class varied, but they all received specialized instruction on a general education curriculum from a special education teacher, and there were no nondisabled students in the class.

In the spring of C.B.'s fourth-grade year, Henry County's IEP team convened to assess his progress and to determine what, if any, adjustments needed to be made to his IEP heading into fifth grade. During this IEP team meeting, C.B.'s IRR teacher stated that C.B.'s progress on his goals fluctuated in her class. She explained that, although C.B. made progress on his IEP goals and objectives, she was working with C.B. on first-grade standards in both language arts and math. The IRR teacher also noted that she occasionally had to pick up C.B. from his previous class to take him to the IRR class, even though her IRR students were expected to travel to her class on their own.

Although the IEP team considered paraprofessional support for C.B. in the IRR class, the IRR teacher opined that the IRR class

was no longer appropriate for C.B. because he was not meeting the appropriate benchmarks. Despite objections from C.B.'s parents and attorney, the IEP team decided that C.B.'s fifth-grade placement would change from the IRR class to a mild intellectual disability ("MID") class for language arts and math. The MID class included students who were impaired to a greater extent than students in the IRR class, and the MID class's curriculum was paced and modified to support the students' cognitive and adaptive abilities. Henry County's staff also all agreed that C.B. needed assistive technology devices or services to complete his school assignments.

As a result of Henry County's decision, C.B.'s parents requested a due process hearing before the Georgia Office of State Administrative Hearings. Relevant to this appeal, C.B.'s parents alleged that Henry County had violated his rights under the IDEA because the MID class was not his least restrictive environment. C.B.'s mother informed the school that she had filed an administrative complaint and that she was invoking C.B.'s right to stay put under the IDEA. *See* 20 U.S.C. § 1415(j) (2018). This provision provides that, during the pendency of proceedings to enforce IDEA rights, "the child shall remain in the then-current educational placement of the child," unless "the State or local educational agency and the parents otherwise agree." *Id.* On the first day of school, C.B.'s mother refused to let C.B. be placed in the MID class or any of the other classes in which he was enrolled.

An administrative law judge ordered C.B. to remain in the IRR class until the complaint was resolved, and C.B. returned to

school. The judge held a hearing on the complaint over the course of five days and heard testimony from several of C.B.'s teachers and Henry County staff. The judge ultimately found that (i) C.B.'s placement in the MID class, as opposed to the IRR class, did not violate the IDEA, and (ii) the Georgia Alternate Assessment was the appropriate assessment for C.B., rather than the Georgia Milestones Assessment. The Georgia Milestones Assessment is the standardized test typically administered in general education classes; whereas, the Georgia Alternate Assessment is an alternative for students with disabilities for whom the Georgia Milestones Assessment is inappropriate. Ga. Comp. R. & Regs. 160-3-1-.07(h), (k).

On appeal to the district court, the court affirmed the administrative law judge's order. It found that the parents' appeal did not raise a least-restrictive-environment issue under the IDEA because it was a request for the court to decide a methodology or program selection issue: which special education class within Henry County's special education program was appropriate for C.B. The district court found no binding precedent holding that a school district's selection between two possible special education class placements implicates the IDEA. The court held in the alternative that Henry County had mainstreamed C.B. to the maximum extent appropriate, in accordance with the IDEA.

As to the propriety of the Georgia Alternate Assessment, the district court found the issue moot because Henry County had since determined that C.B. would not be required to take the

Georgia Alternate Assessment given the Georgia Department of Education's new criteria for the test.

The parents appealed the district court's decision.

## II. STANDARD OF REVIEW

Whether a child with disabilities has been placed in the least restrictive environment under the IDEA is a mixed question of law and fact. *See Greer v. Rome City Sch. Dist.*, 950 F.2d 688, 696–98 (11th Cir. 1991), *op. withdrawn*, 956 F.2d 1025 (11th Cir.), *and reinstated in part*, 967 F.2d 470 (11th Cir. 1992) (reinstating the opinion in full except for the analysis that addressed jurisdiction). We have not explicitly addressed which standard governs this mixed question. We have, however, stated that whether an individualized educational program provides a free and appropriate public education under the IDEA is "a mixed question of law and fact subject to *de novo* review." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008) (citation omitted). Because consideration of whether a child received a free and appropriate public education and whether a child was placed in the least restrictive environment both arise under the same IDEA provision, 20 U.S.C. § 1412, we will likewise review the least-restrictive-environment question de novo.

To the extent the issue involves the interpretation of the IDEA, it is a question of law that we review de novo. *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1181 (11th Cir. 2014). To the extent the issue involves the administrative law judge's factual

findings, "[w]e review [the administrative law judge's] findings of fact for clear error." *Id.*

## III. DISCUSSION

The parents raise three issues on appeal. First, they argue that the IRR class was C.B.'s least restrictive environment because it was closer to a "regular" educational environment. Second, they raise evidentiary challenges to the administrative law judge's reliance on the May 14, 2019, IEP meeting transcript during the administrative proceedings. Third, they challenge the district court's mootness determination as to the Georgia Alternate Assessment claim. We provide an overview of the IDEA before addressing the parents' arguments.

### A. *History of IDEA*

Before 1975, no federal statute required states that received federal education funds to provide children with disabilities a free public education. Then Congress enacted the Education for All Handicapped Children Act of 1975 ("EHA"), Pub. L. No. 94-142, 89 Stat. 773. The core directives of the EHA required states to provide children with disabilities a free and appropriate public education, a written individualized education plan tailored to each child, and instructional placements that allowed the child to be educated alongside nondisabled peers to the maximum extent appropriate. *Id.* This last requirement became known as the least-restrictive-environment directive.

In 1990, Congress amended the EHA and renamed it the Individuals with Disabilities Education Act. Individuals with Disabilities Education Act, Pub. L. No. 101-476, 104 Stat. 1103, 1141–42 (1990). This amendment strengthened the EHA's existing framework while keeping its core directives intact, including the least-restrictive-environment directive. *Compare* 20 U.S.C. § 1412(5)(B) (1976), *with* 20 U.S.C. § 1412(5)(B) (1994). Thus, we rely on our prior decisions interpreting the EHA for guidance. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009) (recognizing that courts may rely on prior IDEA interpretations since Congress amended the statute but left the relevant text unchanged).

## B. *Least Restrictive Environment*

The IDEA requires children with disabilities "[t]o the maximum extent appropriate," be educated in the least restrictive environment or "educated with children who are not disabled." 20 U.S.C. § 1412(a)(5)(A) (2018); *see* 34 C.F.R. § 300.114(a)(2) (same). The least-restrictive-environment directive is also called "mainstreaming." *Greer*, 950 F.2d at 695. Only when the child's disability prevents "education in regular classes with the use of supplementary aids and services" should a school remove that child "from the regular educational environment." 20 U.S.C. § 1412(a)(5)(A).

The parents, relying on our decision in *Greer*, urge us to hold that Henry County failed to mainstream C.B. to the maximum extent appropriate because the IRR class was C.B.'s least restrictive environment. We decline to do so for two interrelated reasons.

First, the text of the IDEA makes clear that the least-restrictive-environment requirement applies only to the placement choice between a regular education class and a special education class—not to placement choices among different types of special education classes. 20 U.S.C. § 1412(a)(5)(A) (explaining that a child with disabilities being removed from the "regular educational environment occurs only when the nature or severity of the disability of [the] child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily"). The parties do not dispute that both the IRR and MID classes are special education classes. Moreover, the parents do not argue that C.B. should be placed in a regular education class for language arts and math. Rather, the parents request that we determine that C.B. should be placed into a particular special education class for those subjects. Thus, the administrative law judge and the district court both properly concluded that a child's removal from one special education class and placement in a different special education class within the same school does not present a least-restrictive-environment concern under the IDEA.

Second, even if we rely on our least-restrictive-environment test as stated in *Greer*, the parents have not demonstrated that Henry County fails the test. In *Greer*, a decision interpreting the

EHA, we recognized for the first time that the Supreme Court's test to determine whether a child is receiving a free and appropriate public education "was not intended to decide mainstreaming issues." 950 F.2d at 695–96 (discussing the free and public education test stated in *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982)). Put differently, whether a child is receiving a free and appropriate public education requires a separate analysis from whether the child has been placed in the least restrictive environment. *Id*. We further recognized that the Supreme Court had not developed a test to determine whether a child has been placed in the least restrictive environment. *Id*. at 696. As such, in *Greer*, we adopted the two-part test developed by the Fifth Circuit in *Daniel R.R. v. State Board of Education*, 874 F.2d 1036, 1048 (5th Cir. 1989). *Id*.

At step one, we ask whether a child with disabilities can be satisfactorily educated in a regular class with the use of supplemental aids and services. *Id*.; 20 U.S.C. § 1412(a)(5)(A). In other words, if the child can be educated in a "regular educational environment" with the use of supplemental aids and services, a school district violates the IDEA by moving the child to a special education class. 20 U.S.C. § 1412(a)(5)(A); *Greer*, 950 F.2d at 696. If step one cannot be achieved and the school removes the child from the regular class, step two requires us to ask whether the school has mainstreamed the child—educated the child with their nondisabled peers—to the maximum extent appropriate. *Greer*, 950 F.2d at 696. Notably, a placement decision between two special education classes is not a factor in the least-restrictive-environment analysis.

24-11410                Opinion of the Court                11

The issue in *Greer* was whether a school district violated the least-restrictive-environment requirement by failing to consider whether a child with disabilities could remain in general education classes with supplemental services before it moved the child to a self-contained special education class. *Id.* at 691–93. We held that the school district failed at step one because "during the development of the IEP, [the school district] did not take steps to accommodate [the child] in the regular classroom." *Id.* at 698–99. Here, the parents' least restrictive environment claim fails at step one because *Greer* focuses on "education in the regular class" as opposed to a special education class. *Id.* at 696.

Because Henry County was considering a placement choice between two special education classes, not between a regular class and a special education class, the parents cannot show that Henry County did not comply with the IDEA's least-restrictive-environment directive. *Id.* at 698; 20 U.S.C. § 1412(a)(5)(A). Thus, we do not reach the second step of *Greer*—whether Henry County has mainstreamed C.B. to the maximum extent appropriate. *Greer*, 950 F.2d at 698; *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 400 (2017) (noting "that the IDEA requires that children with disabilities receive education in [a] regular classroom whenever possible" (citation modified)). The parents point to no requirement to consider mainstreaming when the placement decision is between two special education classes. Indeed, to do so would expand the concept of "mainstreaming" beyond the statutory text and our precedent.

A school district's educational placement decision has long been considered a "question[] of methodology," best left for "resolution by the States." *Rowley*, 458 U.S. at 208. The parents argue that *Endrew F.* requires Henry County to prove that the MID class was an appropriate placement. *See Endrew F.*, 580 U.S. at 403–04. Not so. In *Endrew F.*, the Supreme Court held that "[w]hen *a child is fully integrated in the regular classroom*, as the [IDEA] prefers," a school district must provide "a level of instruction reasonably calculated to permit advancement through the general curriculum." *Id.* at 402 (emphasis added). *Endrew F.* did not address the situation that confronts us in this case: whether a least-restrictive-environment challenge may be brought when a child is moved from one special education class to another.

But even if *Endrew F.* controlled, the Supreme Court made clear that its holding "should not be mistaken for an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 404 (citation modified). Rather, "deference [to school authorities] is based on the application of expertise and the[ir] exercise of judgment." *Id.* The reviewing court's role is limited to assessing whether school officials have provided "a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Id.* We find that Henry County met this requirement.

The record shows that Henry County thoroughly assessed C.B.'s unique needs and challenges before it determined that the MID class was C.B.'s appropriate educational placement. Henry County's IEP team concluded that C.B.'s educational abilities were such that they could not be managed in the IRR class, even with accommodations. The team then determined that C.B. would benefit from the MID class over the IRR class because of the former's increased visual supports and its adaptive curriculum tailored to support the students' cognitive abilities. Additionally, the team agreed that C.B. needed assistive technology devices or services to complete his school assignments. On this record, we defer to Henry County's application of its expertise and its judgment that the MID class was the more appropriate placement for C.B. *See Endrew F.*, 580 U.S. at 404; *Greer*, 950 F.2d at 699 ("[I]t is not our intention here to invade the deference due to school districts in their choice of educational methodologies. . . . [T]his deference is due once a court determines that the requirements of the IDEA have been met . . . ." (citation modified)).

Finally, the parents take issue with the administrative law judge's reliance on the transcript of the May 14, 2019, IEP meeting, at which C.B.'s teacher discussed his progress in the IRR class. They argue that relying on the transcript was improper because the teacher did not testify at the administrative hearing. Henry County responds that the parents' evidentiary challenge is meritless for several reasons: they waived any challenge to the use of the IEP meeting transcript because they introduced the evidence at the hearing, they did not request any limitation on the use of the transcript

during the hearing, they did not raise an objection during the hearing, and they perfunctorily raised an objection for the first time in a footnote in their motion for final judgment on the administrative record filed in the district court.

We agree with Henry County. The parents, with no objection from Henry County, moved to admit the IEP meeting transcript into evidence at the hearing. In their response brief, the parents do not dispute Henry County's assertions that they did not seek to limit the use of the transcript at the hearing and did not object to the administrative law judge's reliance on the transcript until they filed a motion for final judgment on the administrative record in the district court. As Henry County points out, the parents rely on the portion of the transcript that is favorable to their position in their motion for final judgment on the administrative record and on appeal, while disputing the unfavorable portions as unadmitted hearsay.

Under Georgia's rules of evidence, the parents waived any objection to the administrative law judge's reliance on the May 14, 2019, IEP meeting transcript that they introduced into evidence. Ga. Code. Ann. § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible."); *Torres v. City of Jonesboro*, 842 S.E.2d 75, 77 (Ga. Ct. App. 2020) ("The contemporaneous objection rule provides that 'counsel must take exception to the alleged error *at the earliest possible opportunity* in the progress of the case by a proper objection made a part of the record.'" (quoting

*Sharpe v. Dept. of Transp.*, 467 S.E.2d 722, 723 (Ga. 1996)) (emphasis in original).  Regardless, even if the administrative law judge had erred in relying on the teacher's statements, that error would not alter our conclusion that the IDEA does not apply to placement choices among different types of special education classes.

We therefore affirm the district court's ruling that the parents could not prevail on their least restrictive environment claim.

### C. *The Georgia Alternate Assessment*

As relevant to this case, the Georgia Department of Education has two tests to determine diploma eligibility: the Georgia Milestones Assessment and the Georgia Alternate Assessment ("GAA"). Ga. Comp. R. & Regs. 160-3-1-.07(1)(h), (k).  C.B.'s revised IEP would have required the GAA. But since the parents obtained the stay put order when C.B. was entering the fifth grade, he has remained subject to the Georgia Milestones Assessment. By the time of this appeal, C.B. was seventeen years old and in the eleventh grade.

The parents argue that Henry County violated the IDEA when it changed the method by which C.B. would be assessed. The district court found this issue to be moot because Henry County "has since determined that C.B. does not meet the criteria issued by the Georgia Department of Education for the new GAA assessment."

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1086 (11th

Cir. 2004) (citation modified). At oral argument, Henry County argued that the case was "doubly moot" because C.B. is now a high school student who has never been subject to the GAA, and the school district's handbook states that GAA participation in both middle and high school is required to receive an alternative diploma. After we ordered supplemental briefing, the parents responded that the issue is not moot because an IEP assessment must occur annually, and state rules require the IEP team to consider alternative assessments even if C.B. would no longer be eligible for an alternative diploma. We agree with the parents.

Georgia's regulations require the IEP team to make an alternative assessment decision every year at the IEP team meeting. Ga. Comp. R. & Regs. 160-4-7-.06(1)(c)–(g). The IDEA has a similar requirement. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(VI)(bb); 34 C.F.R. § 300.160(a), (c). A student's placement in an alternative assessment track rather than the statewide assessment track must be included in each student's annually revised IEP. *See* 34 C.F.R. §§ 300.320(a)(6)(ii), 300.324(b). Thus, the GAA claim is not moot because, at the time of the proceedings below and on appeal, it was a "live" issue, and C.B. had a "legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation modified); *see K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d. 1195, 1200–01 (11th Cir. 2013) (holding that an IEP consideration that changes from year to year is an exception to mootness). Because the district court dismissed the GAA claim as moot, we remand this issue to the district court to consider in the first instance.

## IV. CONCLUSION

The district court's judgment is **AFFIRMED IN PART AND VACATED IN PART**. The district court's ruling in favor of Henry County on C.B.'s placement decision is **AFFIRMED**. The district court's dismissal of the GAA claim is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.